EX PARTE JAMES HUTSELL.

No. 3677.  Decided October 20, 1915.

Rehearing denied January 19, 1916.

**1.—Loan Broker—Constitutional Law—Habeas Corpus.**

The Act of the Thirty-fourth Legislature, chapter 28, defining and regulating loan brokers, is constitutional, and where the relator admitted that he violated its provisions he is remanded to custody.

**2.—Same—Classification—Reasonable Regulations.**

The contention that as a banker or other money lender, who does not pursue the business of taking as security for money loaned an assignment of wages or a mortgage upon household and kitchen furniture, does not come within the provisions of the law, and that, therefore, the same does not bear equally upon all citizens, and that it is a capricious classification and an un-

reasonable regulation of those who pursue this class of business, is not well taken. Distinguishing Owens v. State, 53 Texas Crim. Rep., 105.

### 3.—Same—Statutes Construed—Constitutional Law—Not Prohibitive.

The above Act exempts no person from the operation of its provisions, but applies to all who engage in the line of business defined, and is not prohibitive for levying a tax of one hundred and fifty dollars per annum; besides, no evidence is offered in this case that such a tax would be prohibitive.

### 4.—Same—Public Welfare—Private Rights—Reasonable Restrictions.

The above Act is not unconstitutional on the ground that a man has the, right to do as he pleases with that which belongs to him, as this right can be restricted where the public welfare demands it, and the Legislature can say that a man can mortgage his property only upon the conditions named in the law.

### 5.—Same—Law Not Prohibitive—Lawful Interest.

There is nothing in the above Act that is prohibitive, it only requires that the creditor or money lender shall deal fairly with the borrower, and charge no more interest than the Constitution and laws of this State permit. Following Taylor v. Sturgis, 68 S. W. Rep., 538.

### 6.—Same—Bond—Reasonable Requirements.

The section of the Act which provides that before engaging in such business one must give bond in the sum of $5000, conditioned that he will faithfully comply with each and every requirement of the law governing such business, etc., is not an unreasonable requirement.

### 7.—Same—Service—Irrevocable Powers of Attorney—Agent—Presumption—County Judge.

The section of the law which requires each loan broker, before engaging in such business shall file with the county clerk of the county in which he is engaged in business, an irrevocable power of attorney constituting the county judge his agent and attorney in fact, for the purpose of accepting service for him, or being served with citation, is not unconstitutional, and it must be presumed there existed a necessity therefor or the Legislature would not have so provided, and the contention that the law should have selected some other person than the county judge is a matter addressed to the wisdom of the Legislature, and does not affect the constitutionality of the law, even if the county judge should be disqualified to try the cause by reason of his agency, which is a question not decided.

### 8.—Same—Judgment—Suspension of Business—Imprisonment for Debt.

The section of said law which provides that if any judgment obtained upon any bond given by a loan broker shall remain unpaid for sixty days, the license to engage in such business shall be suspended until such judgment is paid, is a reasonable restriction and does not render the law invalid; nor is the same a law which can be construed to be imprisonment for debt.

### 9.—Same—Bond—Collection of Debt—Statutes Construed.

The section of the above law which provides that any judgment obtained by any person against a loan broker under these articles or under the laws of the State of Texas, shall be collectible out of the bond therein provided for, can not be construed to mean that a judgment for debt, not incident to nor growing out of the loan broker's business, may be collected out of said bond; but, even if this provision would be invalid, it would not invalidate the entire Act.

### 10.—Same—Rule Stated—Police Power—Reasonable Regulations.

When a citizen, like a corporation, comes to the government and asks a privilege or license to engage in any given character of business that is subject

to the police power of the State, the State has a right to annex to the privilege or license in granting it any reasonable regulation it deems necessary to attain the purpose and object of the law, and the courts do not sit in judgment on the wisdom of such legislation as long as the same is constitutional.

## 11.—Same—Service of Citation—Reasonable Regulation.

The State has the right to regulate the business of loan brokerage and therefore has the further right to prescribe means whereby the penalties prescribed by the law may be enforced, and to prescribe as a prerequisite to issuing one a license to engage in such business that he shall name the agent upon whom service can be had when the penalties fixed by the law are sought to be enforced. Distinguishing Pennoyer v. Neff, 95 U. S., 715...Following Ex Parte Schallenberger, 96 U. S., 369.

## 12.—Same—Bond—Judicial Knowledge—Prohibitive Restrictions.

The requirement of the Act that a bond be given of $5000 conditioned for the faithful compliance with the law is not prohibitive, in the absence of proof to the contrary, as the court has no judicial knowledge on this question, and even if it had would not be authorized to consider the same; however, the bond is no greater than that required in other laws and which is readily complied with.

## 13.—Same—Continuing Bond—Statutes Construed.

The contention that the bond required by said law shall continue and remain in force and effect so long as such loan broker continues to do business in this State is not sustained by the statute, but the latter provides that a new bond shall be given annually.

## 14.—Same—Penalty—Statutes Construed.

The contention that the law is void because it levies no penalty for its violation is untenable, as it does provide a specific penalty against all persons who engage in the occupation without first taking out a license under the law.

## 15.—Same—Discrimination—Occupation.

The Act of the Thirty-fourth Legislature, chapter 28, defining and regulating loan brokers is not discriminatory in that it does not bear equally on all who may engage in this character of occupation, and that although the Act in itself does not so discriminate that other provisions of law necessarily so result. It is the occupation that one pursues that his license can tax, and this term has a well-defined meaning under our law and the decisions of this court. Following Williams v. State, 23 Texas Crim. App., 499, and other cases.

## 16.—Same—Laws of God and Man—Public Policy—Compromise—Usury.

The said Act of the Legislature is not violative of the laws of both God and man in that it provides all compromises for usury or unlawful interest collected and received are contrary to public policy, and shall be void, because certainly the law can say that no citizen shall have authority to nullify this law as a matter of public policy.

## 17.—Same—Compulsion of Paying Debts—Suspension of Business.

Relator's contention that the law is an effort to make the loan broker pay his debts, which is applied to no other citizen, and if it were, it would likely bankrupt many who are now engaged in legitimate business, is untenable, as the law was not passed to make him pay his debts, but simply provides that if he engages in the loan brokerage business and does not pay the penalties prescribed by law for charging unlawful interest he shall no longer be authorized to engage in such business.

## 18.—Same—Case Stated—Constitutional Law.

In the opinion of the court, on the face of the law, without any facts surrounding the business before us, it does not think that the above Act violates any provision of the Constitution. Davidson, Judge, dissenting.

From Bexar County.

Original habeas corpus proceedings praying release from arrest, upon complaint charging relator with violating the provisions of chapter 28, Acts of the Thirty-fourth Legislature, defining and regulating loan brokers.

The opinion states the case.

*Brooks & Worsham* and *Chambers, Watson & Reyes,* for relator.— On question of unconstitutionality of the law: Owen v. State, 53 Texas Crim. Rep., 105, 112 S. W. Rep., 1075; G., C. & S. F. Ry. Co. v. Ellis, 165 U. S., 150; Hoefling & Son v. City of San Antonio, 85 Texas, 228; Ex parte Overstreet, 39 Texas Crim. Rep., 474.

*C. C. McDonald,* Assistant Attorney General, and *K. C. Barkley,* for the State.—Cited Fidelity Co. v. Alibone, 90 Texas, 660; Austin Rapid Transit v. Groethe, 31 S. W. Rep., 197; Mutual Ins. Co. v. Blodgett, 8 Texas Civ. App., 45; Baldwin v. State, 21 Texas Crim. App., 591; Cotton v. Sanderson, 160 S. W. Rep., 658; Cotton v. Cooper, 160 S. W. Rep., 597.

HARPER, JUDGE.—Applicant sued out a writ of habeas corpus alleging that complaint had been filed against him, charging him with violating the provisions of chapter 28 of the Acts of the Thirty-fourth Legislature, defining and regulating "Loan Brokers." Relator admits he has violated each and every provision of the Act, but contends that the law is unconstitutional, and he, therefore, is entitled to be discharged. Not only does relator admit that he has violated every provision of the Act, but the complaint is so drawn as to necessarily bring in review each section of the Act. Section 1 provides:

"A 'loan broker' is a person, firm or corporation who pursues the business of lending money upon interest and taking as security for the payment of such loan and interest an assignment of wages, or an assignment of wages with power of attorney to collect the same or other order for unpaid chattel mortgage or bill of sale upon household or kitchen furniture."

It is insisted that as a banker or other money lender who does not pursue the business of taking as security for money loaned an assignment of wages or a mortgage upon household and kitchen furniture, does not come within the provisions of the law, the provisions of the law do not bear equally upon all citizens; that it is a capricious classification and unreasonable regulation of those who pursue this class of business. We are cited to the case of Owen v. State, 53 Texas Crim. Rep., 105, 112 S. W. Rep., 1075, as sustaining applicant's contention. In that case the court was passing on a statute which levied a $5000 occupation tax on persons engaged in the business of purchasing assignments of unearned wages, and which Act exempted from the provisions of the law any person taking, accepting or procuring such assignments to pay or secure the purchase price of the necessaries of life, the pur-

chase price of a homestead, or improvements thereon, or any other article necessary to the wage earner in the pursuit of his employment, or the payment of premiums on life or accident insurance, etc. This Act was held unconstitutional, first, because it did not bear equally on all because of the above recited exemptions. The Act before us exempts no person from the operation of its provisions, but applies to all who engage in the line of business defined; second, it was held unconstitutional in that the $5000 tax was prohibitive. This Act is not prohibitive, for it levies a tax of $150 per annum only, and if this is a character of business the Legislature has the right to regulate, certainly the amount of the tax levied would not render the Act void. There is no evidence offered in this case that such a tax would be prohibitive. In the Owens case, supra, it is said: "The Legislature may classify the subjects of taxation, and those classifications may, as they will, be more or less arbitrary, but where the classification is made, all must be subjected to the payment of the tax imposed who, by the existence of the facts upon which the classification is based, fall within it, unless exempted upon some other constitutional provision." Tested by this rule of law, and none doubt its correctness, the Act under consideration would not be invalid. All persons, firms or corporations who pursue the business defined are brought within its provisions—no person pursuing that business is exempted from the operation of the law, and none who do not follow that occupation are required to pay the tax. It is levied on all who pursue that line of business. While a banker, or other money lender, who does not follow this occupation is not liable to the tax, the very moment the banker or any other money lender does engage in this occupation he becomes subject to the tax and all provisions of the law. We do not think it a capricious classification, for it selects a well defined class—men engaged in a specific character of business, and places all within this class under the operation of the law. Our laws have exempted from attachment, garnishment and forced sale household and kitchen furniture, current wages and the tools of one's trade, and no one now questions the validity of such laws. They were passed to protect the laborer and the families of the citizenship of the State, that they might not become dependent upon the State. To go one step further and say that a man should not take a mortgage on wages and household and kitchen furniture to secure a debt due him without the husband and wife both agree thereto, and that he must give bond, if such a lien is given, that the creditor will not charge a greater rate of interest than that fixed by law, does not render the law unconstitutional. But it is insisted that a man has the right to do what he pleases with that which belongs to him. This is true unless the public welfare demands that he be restricted in those rights. A man purchases him a farm, and then marries him a wife. The law says the public welfare demands that he shall not be permitted to sell this homestead without the consent of his wife; that neither he nor the wife, nor both combined, shall give a mortgage

thereon. It is his property; why can not he sell or mortgage it at will? Because the public welfare demands that he shall not be permitted to do so. The best interests of society require that he give up this much of his individual rights. And if the law can say that he can not sell the homestead without the consent of the wife, and can not mortgage it even with her consent, certainly the law can say that he can not mortgage the furniture within that home without the consent of the wife. To say the law can protect the wife and children in the possession of the home, and not protect them in the possession of the furniture inside of the home, would be an absurdity. And if it can be said that he can not mortgage it at all, it can certainly say that he can mortgage it only upon the conditions named in the law.

The contention is made that poor men may need money and having nothing else to give a lien upon. So may the man who only owns a home. There is nothing that is prohibitive in the law; it only requires that the creditor or money lender shall deal fairly with the borrower, and charge no more interest than the Constitution and laws of this State permit. And laws, which have heretofore been held valid, prohibit him, without the provisions of this statute, from charging more than the law permits, and this statute only gives to borrower or debtor a remedy whereby he can recover his money back provided the lender does charge him more than the law allows. The "right of contract" was impaired, if impaired at all, in providing that the lender should not be allowed to charge more than 10 per cent interest on the money, and if he did so charge and collect, even though the borrower had contracted to pay it, the borrower might collect back double the amount so paid. And such law has been held valid. Taylor v. Sturgis, 68 S. W. Rep., 538. This law simply provides a mode of collection.

The second section, which provides that before engaging in such business one must give bond in the sum of $5000, conditioned that he will faithfully comply with each and every requirement of the law governing such business, and will pay to the person dealing with such loan broker any judgment that may be obtained against him, is not an unreasonable requirement, and if the business is such a business as may be regulated by law, the Legislature had the right to provide that such bond should be given as in the pawnbroker statute, the liquor license statutes and other similar laws. And it is not an unreasonable requirement that such broker shall keep a set of books in which all his transactions are to be truly recorded.

The section of the law which requires each loan broker, before engaging in such business shall file with the county clerk of the county in which he is engaged in business, an irrevocable power of attorney, constituting the county judge his agent and attorney in fact, for the purpose of accepting service for him, or being served with citation, is not a new provision of law. The law makes an agent of a railroad company such an agent; the statutes require foreign insurance companies to file such power of attorney, constituting a named person its agent to accept service of citation, or person upon whom citation may

be served. This is a condition placed by law upon the right to engage in such business, and we must assume, in the absence of any showing to the contrary, that the necessity for such provision existed, otherwise the Legislature would not have so provided. Foreign companies or non-resident persons may be engaged in this character of business in this State, and the Legislature deemed it absolutely essential to the proper enforcement of the law. At least, in the absence of any showing to the contrary we must presume there existed a necessity therefor or the Legislature would not have so provided.

The contention that the law should have selected some other person than the county judge, is one addressed to the wisdom of the Legislature, and does not affect the constitutionality of the law. The fact that some of the cases for recovery of usurious interest may be brought in the County Court, does not render the law invalid, even though the county judge should be held disqualified to try the cause by reason of his agency to have citations served on him. The question of whether or not he would be disqualified does not arise in this case, therefore we do not pass on that question, but only the question if it should be held that it did disqualify him, this would not render the law invalid. There are a number of instances in which trial judges are disqualified, and ample provision is made by the law to select a special judge in such instances.

Section 8 provides that if any judgment obtained upon any bond given by a loan broker shall remain unpaid for sixty days, the license to engage in such business shall be suspended until such judgment is paid. Again we think the Legislature had the authority and power to place such restriction in issuing the license. The absolute forfeiture of license has been sustained in this State. And if the Legislature has the right to declare a forfeiture of the rights under the license, certainly it had authority and the right to declare a suspension of the license and say that anyone who continued to pursue the business during the suspension of the license should be guilty of a misdemeanor, and punished by a fine for each and every day the broker should engage in such business during the time the law declares his license shall be suspended, and this section can not be construed to be imprisonment for debt. The law does not pretend to say he shall be imprisoned if he never pays his debt; it simply says if he does not pay a judgment obtained under the law his right to continue in the business shall be suspended, and he shall not engage in such occupation during the time his license is suspended, and provides a penalty, not for failing to pay the debt, but engaging in the business of loan broker during the time the law has suspended his license to engage in such business. If he does not engage in the business while the license is suspended he can not under the law be imprisoned if he never pays the judgment and debt.

Section 9 of the law, which provides that "any judgment obtained by any person against a loan broker under these articles or under the laws of the State of Texas, shall be collectible out of the bond herein provided for," can not and should not be construed to mean that a judg-

ment for debt not incident to nor growing out of the loan brokerage business may be collected out of the bond. If such construction should be placed thereon, then we think this provision would be invalid, but the invalidity of such provision would not invalidate the entire Act. The proper construction of this section is made plain by the conditions of the bond required to be given, which provides simply that the bond shall be conditioned for the faithful compliance with each and every requirement of the law governing the business defined in the Act. The only legitimate construction to be placed on the language of section 9 is that the judgments obtained under this law, or any other law governing loan brokers, as defined in this Act, which have heretofore or may hereafter be passed by the Legislature, shall be collectible out of the bond given. And as said, if section 9 should be held invalid, because of doubt as to the meaning of the words employed, the object and purpose of the law is made plain by the other provisions of the Act and can be accomplished thereunder, and the bond would be liable under section 2 for all judgments obtained because of a violation of the provisions of the law, and the Act should be held valid.

We have not discussed the law by sections, but in the opinion have passed on every question raised by relator, and we are of the opinion the law is in violation of no provision of the Constitution.

The relator is remanded.

*Relator remanded to custody.*

DAVIDSON, JUDGE (dissenting).—I deem it not necessary to write. I am persuaded the case on the law should have been reversed. I further believe some of the provisions clearly invalid and unconstitutional.

### ON REHEARING.

#### January 19, 1916.

HARPER, JUDGE.—Relator has filed a motion for rehearing in this cause, and a very able argument in support of it. It has been pending for some time, and we have during that time given the propositions most careful thought and study, and we are frank to say that the one first presented was not to us entirely free from difficulty, but after reading the decisions of the various States of the Union, and the decisions of the Supreme Court of the United States, we have come to the conclusion that when a citizen, like a corporation, comes to the government and asks a privilege or license to engage in any given character of business that is subject to police power of the State, the State has a right to annex to the privilege or license in granting it any reasonable regulation it deems necessary to attain the purpose and object of the law. One of the purposes and objects of this law is to prevent those who are engaged in the business or occupation of lending money on household goods, or upon assignment of wages of wage earners, to charge a greater rate of interest on such loan than that

authorized by law, and if they do, to provide a ready means whereby the penalty prescribed by law may be readily enforced.

Relator speaks feelingly of the man who has nothing but his wages, or household goods to give as security for a loan, and that it is not right to deprive him of the privilege of mortgaging such property if necessity requires or he desires to do so. With the wisdom of the law this court has not and can not sit in judgment. This power is not confided to us, but the sole question we have to pass on is, is the law violative of any provision of the Federal or State Constitution? Texas was the pioneer State in exempting the homestead from execution and forced sale, and at the same time provided in the Constitution that no mortgage lien could be created thereon, even with the consent of the wife. If such provisions of law were violative of the Federal Constitution, then this clause of our State Constitution would be void, but not so; it has been sustained in all the courts of the land where the question was raised. And if the people had the authority and power to place that provision in the Constitution, then they, acting through their chosen representatives, have the same power to so enact in regard to other species of property whenever they deem the public welfare demands it, if there is no inhibition in the State Constitution. It is the people of the State so enacting, and if the law is unwise and it works unnecessary hardships on the poor and friendless, we have that faith in the ultimate judgment of the citizenship of the State that it will not long remain the law. But be that as it may, it is not a question of whether or not the law is wise or unwise—all we can do is to see whether or not it intrenches upon any right reserved to the citizenship as a whole or any individual citizen, and we shall discuss the law from that standpoint, and that alone, and will not diverge into other fields.

The first contention of relator is, that we erred in holding that the State, had the authority and power to provide, as condition prerequisite to issuing one a license to engage in this business, that the licensee 'shall file a power of attorney, appointing the county judge of the county, in which such license is sought to be obtained, his agent upon whom service of citation may be had, for any suit growing out of the loan brokerage business as defined by this law. And we will say, that relator desires us to correct the impression, if such was made by the original opinion, that he contended that the law was void by reason of it selecting the county judge as such agent to be appointed. Relator concedes that if the Legislature had the authority to require the selection of an agent upon whom process might be had, the law could select the county judge. His contention is that no authority existed to require the naming of an agent for the purpose named, and he ably presents this question. One of the most and oftenest quoted opinions on this subject is that of Pennoyer v. Neff, 95 U. S., 714, 24 Law Ed., 565, and in that opinion the Supreme Court of the United States says:

"Neither do we mean to assert that a State may not require a non-resident entering into a partnership or association within its limits, or

making contracts enforceable there, to appoint an agent or representative in the State to receive service of process and notice in legal proceedings instituted with respect to such partnership, association, or contracts, or to designate a place where such service may be made and notice given, and provide, upon their failure to make such appointment or to designate such place that service may be made upon a public officer designated for that purpose, or in some prescribed way, and that judgment rendered upon such service may not be binding upon the non-residents both within and without the State. As was said by the Court of Exchequer in Vallee v. Dumergue, 4 Exch., 289, 'It is not contrary to natural justice that a man who has agreed to receive a particular mode of notification of legal proceedings should be bound by a judgment in which that particular mode of notification has been followed, even though he may not have actual notice of them.' See also Ins. Co. v. French (supra) and Gillespie v. Ins. Co., 12 Gray., 201. Nor do we doubt that a State, on creating corporations or other institutions for pecuniary or charitable purposes, may provide a mode in which their conduct may be investigated, their obligations enforced, or their charters revoked, which shall require other than personal service upon their officers or members. Parties becoming members of such corporations or institutions would hold their interest subject to the conditions prescribed by law. Copin v. Adamson, L. R., 9 Ex., 345."

And in Wilson v. Seligman, 144 U. S., 41, 36 Law. Ed., 338, the Supreme Court of the United States holds:

"It may be admitted that any State by its laws may require, as a condition precedent to the right of a corporation to be organized, or to transact business, within its territory, that it shall appoint an agent there on whom process may be served; or even that every stockholder in the corporation shall appoint an agent upon whom, or designate a domicile at which, service may be made within the State, and that, upon his failure to make such appointment or designation, the service may be made upon a certain public officer, and that judgment rendered against the corporation after such service shall bind the stockholders, whether within or without the State. In such cases the service is held binding because the corporation, or the stockholders, or both, as the case may be, must be taken to have consented that such service within the State shall be sufficient and binding; and no individual is bound by the proceedings who is not a stockholder. Lafayette Ins. Co. v. French, 59 U. S., 404, 18 How., 404 (15 Law. Ed., 451); Ex parte Schollenberger, 96 U. S., 369 (24 Law. Ed., 853); Pennoyer v. Neff, 95 U. S., 714, 735 (24 Law. Ed., 565, 573); Vallee v. Dumergue, 4 Exch., 290, 303; Copin v. Adamson, L. R., 9 Exch., 345, 355, 356, and L. R., 1 Exch., div. 17."

It is thus seen that the United States Supreme Court holds that such provisions of law may be applicable to an individual as well as to corporations who seek a privilege or license from a State. If the loan brokerage, as defined, was not of a character of business the State had the right to regulate and control, a different question would be

presented, but inasmuch as it is such a business, the State has the right to prescribe that no one engaged in it shall charge a greater rate of interest than that authorized by the laws of the State, and prescribe means to prevent one from charging such excess rate, and if they do, to provide means whereby the penalties prescribed by law may be enforced, then the State has the right to prescribe as a prerequisite to issuing one license to engage in such business that he shall name an agent upon whom service can be had when the penalties fixed by the law of the State are sought to be enforced, if the laws pertaining to such business are violated by the person to whom license is issued.

Relator contends that even if the State had the right to require that an agent be designated upon whom service could be had, in case he violated the law, the State had no right to require that he give a $5000 bond, "conditioned that he will faithfully comply with each and every requirement of the law governing the loan brokerage business, as defined, and will pay to any person dealing with such loan broker any judgment that may be obtained against him." That bond in such sum is prohibitive, and without proof we ought to take judicial notice that no person can give bond in such sum. The writer feels that the courts have no judicial knowledge on this question, and if we had personal knowledge we would not be authorized to take into consideration in passing on this question. We do not know the volume of business done by those engaged in the loan brokerage business, nor the profits arising from such business. We do not know whether this bond is excessive or not. We do know it is in no greater amount than the bond required of retail dealers in spirituous liquors, and that bond is conditioned, as is this one,—that the licensee will obey the law governing such business, and will pay penalties to any person suffering by reason of the licensee not observing the law governing his business. And such law has been upheld by our courts in numerous instances. We do know that retail dealers readily give such bonds, and it seems to us that if they can do so, with the environments thrown about them, then certainly a loan broker under this statute can do so, if he has so lived as to have the reputation of being a law-abiding citizen, and if not, this law or any other law does not contemplate the licensing of any person to engage in any character of business who is a criminal, or continuous violator of the laws of this State. Such laws are in force in many States, not only with reference to liquor dealers, but also in reference to persons engaged in the business of pawnbroker, and they have uniformly been upheld in the various States of the Union. We all know that bonds of this character are to a large extent now made by indemnity or surety companies, and in this record there is no evidence of what their fees would be for becoming surety on such bond, and no evidence that the average profits on business of this character would not justify the paying of such fees. Then it authorizes the giving of a personal bond.

The contention of relator "that the bond given shall by its terms and recitals provide that it shall continue and remain in force and

effect so long as such loan broker continues to do business in this State—that it is like a mighty river, going on forever," is not sustained by the statute in question. It provides that a new bond shall be given annually, so that the bond given in any one year will be held to be responsible only for violations of the law and penalties incurred during the year in which it was given to cover alone, and by provisions of law it expires at the end of the year, and is liable for no transactions occurring after that time. We have provisions fixing the time in which suits may be brought upon this bond, as we have in case of the liquor dealer and pawnbroker bonds, and its provisions are no more onerous than are the bonds in those instances.

It is contended the law is void, because it levies no penalty for its violation. If that was the correct construction of the law we are satisfied relator would not take the time nor trouble to contest its validity. Our laws provide if one lending money shall charge and collect a greater rate of interest than that fixed by law, he may be required to pay back double the interest so collected. This is the penalty prescribed by law, and for which the bond given will be liable, and it is because of this penalty and liability relator contends the bond will be so difficult to give. We must always view laws dealing with a given subject in their entirety, and not take one separate provision and construe it alone. (Lewis' Sutherland Statutory Construction, secs. 443 to 449.) But in addition to this in section 10 a specific penalty is assessed against all persons who engage in the occupation licensed without first taking out a license under the law.

It is also contended that the law is discriminatory in that it does not bear equally on all who may engage in this character of occupation. We think relator is wrong in seeking to place such construction on the law. He admits that the Act in question, in and of itself, does not do so, but his contention is that other provisions of law necessarily so result. If the law does not bear equally on all who engage in the given occupation, we would readily concede that it is invalid, but the illustrations cited by relator do not bear out his contention. It should be remembered that it is a given occupation that is taxed, pursuing a certain line of business, and we think all who pursue that occupation will be liable for the tax. It is true that a lawyer, as cited by relator, might occasionally take such a lien to secure his fee, and it would not render him liable for the tax, nor that some person who might sell another furniture would retain a lien to secure the payment of the purchase price would not be rendered liable for the tax. But neither of them would be engaged in the business and occupation of "lending money upon interest." It is the occupation that one pursues that is licensed and taxed, and this term has a well defined meaning under our law and the decisions of this court. Tarde v. Benseman, 31 Texas, 277; Standford v. State, 16 Texas Crim. App., 331; Williams v. State, 23 Texas Crim. App., 499.

Relator next contends that the provisions of the law are violative of "the laws of both God and man" in that it provides "all compromises

for usury or unlawful interest collected and received are contrary to public policy, and shall be void." Why the prohibition of a compromise of the penalty prescribed by law for doing this unlawful Act is any more violative of law than the prohibition of compromises of other unlawful acts, we are unable to discern. Art. 422 of the Code, and Shriver v. McCann, 155 S. W. Rep., 317. The law has fixed the penalty for charging unlawful interest, and certainly it can say that no citizen shall have authority to nullify this law as a matter of public policy.

We want to also say in behalf of relator that he did not contend that the provisions of this law could be construed into imprisonment for debt, and if the original opinion gave such an impression we readily make the correction at his request. His contention is that it is an effort to make the loan broker pay his debts, which provision of law is applied to no other citizen, and if it were, it would likely bankrupt many who are now engaged in legitimate business. If a man violates many of the laws of the State in which a pecuniary penalty is assessed, he is taken bodily and imprisoned in jail, and held until the penalty is paid, or he has served out the time either in jail or upon public works at so much per day. This was not to make him pay the debt, but to respect and observe the law. So in this instance, the law simply prescribes that if a man engaged in the loan brokerage business as defined, does not pay the penalties prescribed by law for charging unlawful interest, if he does do so, such person shall no longer be authorized under the law to engage in such business. It suspends his license to engage in business until he has paid the penalty the law prescribes if he charges unlawful interest, and such fact established in a court of law. Nothing more, and even absolute forfeitures under such circumstances have been sustained.

While perhaps we have not discussed every question presented in the motion and argument for a rehearing, yet we have done so either in this order or in the original opinion, and in our opinion, on the face of the law, without any facts surrounding the business before us, we do not think it violative of any provision of the Constitution, with the statement that under the provisions of the law the loan broker under his bond would be liable on his bond for no amount other than the penalties fixed for the charging and collecting of unlawful interest, and suit could not be maintained by service upon the county judge for any other transaction than that growing out of charging and collecting unlawful interest in making loans and taking security for the payment of such loans and interest on assignment of wages and powers of attorney to collect same or other order for unpaid chattel mortgage or bill of sale upon household and kitchen furniture.

The motion for rehearing is overruled.

*Overruled.*

DAVIDSON, JUDGE, dissenting.