## C. O. Juhan v. The State.

### No. 4544.  Decided June 5, 1918.

### Rehearing granted October 22, 1919.

#### 1.—Loan Brokers—Constitutional Law—Police Power—Rule Stated.

The police power is not an arbitrary one, but has its limitations.  It is commensurate with, but does not exceed, the duty to provide for the real needs of the people in their health, safety, comfort and convenience, as consistently as may be with private property rights.  As those needs are extensive, variant and indefinite, the power to deal with them is likewise broad, indefinite and impracticable of precise definition or limitation. Following H. & T. C. Ry. Co. v. Dallas, 98 Texas, 396.

#### 2.—Same—Rule Stated—Police Power—Reasonable Regulations—Loaning Money.

It cannot be questioned that the State, under its police power, has the right to regulate the conduct of a business to protect the public health, morals and welfare, observing constitutional limitations, reasonable classification and terms of control;  and the right to lend money is a creature of statute and not an inherent right.  Distinguishing Owens v. State, 53 Texas Crim. Rep., 105.

#### 3.—Same—Constitutional Law—Police Power—Reasonable Restrictions—Loan Brokers.

The business of loan broker is one whose regulation is within the police power of the State, and reasonable restriction thereof may be provided by the Legislature, but the citizen cannot be arbitrarily deprived to engage in such business of his right to the equal protection under our laws and the due course and process of law.

#### 4.—Same—Statutes Construed—Bond—Loan Broker—Service of Process.

The Act of the Thirty-fourth Legislature concerning loan brokers, requiring a bond as a prerequisite to engaging in that business is proper, provided the amount and the conditions of such bond be not improper;  nor is it unreasonable in its requirement that a foreign corporation appoint an agent upon whom service of legal process may be had, provided that such requirement is reasonable, but no citizen of this State can be compelled to relinquish or waive his right to his day in court as a condition to engaging in a lawful business, or requiring a bond of him seeking to impose such condition.

#### 5.—Same—Other Offenses—Collateral Transactions—Handwriting.

The Act of the Thirty-fourth Legislature, Chapter twenty-eight, regulating the business of loan brokers is declared unconstitutional as to those provisions in said Act which fix the conditions of the bond and require a waiver of the loan broker's right to object to defective service, and permit the payment of other judgments out of the bond; and which seek to deprive him of his property and privileges without due course of law.  Overruling Ex parte Hutsell, 78 Texas Crim. Rep., 589.

Appeal from the County Court of Collin.  Tried below before the Hon. R. L. Moulden.

Appeal from a conviction of a violation of the Act of the

Thirty-fourth Legislature regulating the business of loan brokers; penalty, a fine of fifty dollars.

The opinion states the case.

*Charles F. Greenwood* and *John W. Pope*, for appellant.—On question of service, and due process of law: Jacobs v. Roberts, 223 U. S., 261; Leigh v. Green, 193 id., 79; Hovey v. Elliott, 167 id., 409; Holler v. Holly, 176 id., 398.

On question of unconstitutionality of Act:—Jordon v. State, 51 Texas Crim. Rep., 531; Owens v. State, 53 Texas Crim. Rep., 105, 112 S. W. Rep., 1075; Massie v. Cessna, 88 N. E. Rep., 152; People v. Coolidge, 50 L. R. A., 493; Rodge v. Kelley, 40 So. Rep., 552; Ex parte Sohncke, 82 Pac., 956; Lochner v. New York, 198 U. S., 45; S. L. Ry. Co. v. Griffin, 106 Texas, 477; H. & T. C. Ry. Co. v. Dallas, 98 Texas, 396; Dobbins v. Los Angeles, 195 U. S., 223; Lawton v. Steele, 152 id., 133; Smith v. State, 233 U. S., 630; Coppage v. Kansas, 236 U. S., 1.

On question of unreasonable classification: Jackson v. State, 55 Texas Crim. Rep., 557; Ex parte Jones, 38 id., 482; Ex parte Bockhorn, 62 id., 651; Pullman Co. v. State, 64 Texas, 274.

*E. A. Berry*, Assistant Attorney General, for the State.

MORROW, Judge.—The prosecution is for violation of the Act of the Thirty-fourth Legislature, Chapter 28, defining "Loan Broker's" and providing regulations therefor and punishment for violations thereof.

A loan broker is defined in the act as follows: "A 'loan broker' is a person, firm or corporation who pursues the business of lending money upon interest and taking as security for the payment of such loan and interest an assignment of wages, or an assigment of wages with power of attorey to collect the same or other order for unpaid chattel mortgage or bill of sale upon household or kitchen furniture." Other provisions, making conditions precedent to the engagement in the business, require a bond of five thousand dollars, prescribing its terms; that a book registering the transactions shall be kept open to inspection; the filing of power of attorney, making the county judge the agent upon whom service of process may be had; penalizing the continuance of the pursuit of the business when in default of the payment of the judgment rendered on the bond; requiring that in securities pledged by a married man the wife shall join; fixing an annual tax; declaring compromises for usury void, and prescribing a penalty.

The appeal is maintained on the proposition that appellant in lending money at the legal rate on chattel mortgage security was exercising an inalienable right, and that the Act abridging it

is void for want of power in the legislative department of the government, and its terms unreasonable.

He urges various reasons for his contentions. These cannot within the limits of an opinion be followed in detail. All of them are referable to the scope and limits of the police power of the State. This power has been the subject of much comment by text writers and judges, so much that it would be futile to attempt its review. No more satisfactory statement of it·has been found than that made by Justice Williams of the Supreme Court of this State in the opinion in H. & T. C. Ry. Co. v. Dallas, 98 Texas, 396, from which· we quote as follows:

"The power is not an arbitrary one, but has its limitations. It is commensurate with, but does not exceed the duty to provide for the real needs of the people in their health, safety, comfort and convenience, as consistently as may be with private property rights. As those needs are extensive, various and indefinite, the power to deal with them is likewise broad, indefinite and impracticable of precise definition or limitation."

Courts have not undertaken to catalogue the subjects upon which the police power may operate, nor to define in precise terms the measures that may be lawfully taken, but are guided by previous decisions and pass upon particular cases as they arise, and determine whether they fall within or without the proper limits. See Hudson v. McCarter, 209 U. S. 349; Chicago v. R. R., 53, Am. St. Rep., 557; State v. Harrington, 34 L. R. A., 100; Ives v. South Buffalo Ry. Co., Ann. Cas., 1912-B, p. 156; Stone v. Mississippi, 101 U. S., 814, 25 L. Ed., 1079; Dunn v. Commonwealth, 43 L. R. A., 701; Aubrey's Case, 104 Am. St. Rep., 952; People v. Budd, 5 L. R. A., 559. It follows that the decisions of courts passing upon laws similar to those before it in a given case become important subjects of investigation.

It cannot be questioned that the State, under its police power, has the right to regulate the conduct of business to protect the public health, morals and welfare, observing constitutional limitations, reasonable classification, and terms of control. This is recognized in constructions of both the Federal and State Constitutions. Tiedeman on Lim. Police Power, Sec. 102; Mugler v. Kansas, 123 U. S., 623, 31 L. Ed., 205; Murphy v. People of Cal., 225 U. S., 623, 56 L. Ed., 1229, 41 L. R. A. (N. S), 153, St. Louis v. Fisher, 167 Mo., 654, 99 Am. St. Rep., 614, 64 L. R. A., 679, 194 U. S., 361, 48 L. Ed., 1018, and other cases listed in Ruling Case Law. Vol. 6, p. 198.

Callings that cannot be regulated except by license tax are those which cannot in their operation be dangerous to the public. Teidman on Lim. Police Power, p. 273; Ex parte Dickey, 144 Cal., 234, 1 Ann. Cas., 428, 66 L. R. A., 928. All others may be restricted. Tiedeman on Lim. Police Power, Sec. 102; Ex parte Drexel, 2 L.

R. A. (N. S.), 588; Stone v. Mississippi, 101 U. S., 814, notes 15 and 16, and other cases listed in 6 Ruling Case Law, p. 218, note 16. And those essentially harmful may be prohibited. Commonwealth v. Frooman, 25 L. R. A., 250; Ruling Case Law, Vol. 6, p. 194, note 6 and cases cited.

The calling of lending money at interest is subject to regulation. From 22 Cyc., 1471, we quote the following:

"The taking of interest, or as it was then called, 'usury,' was looked upon in early times with great disfavor; and actually prohibited, not only by the Mosaic law among the Jews, but also under severe penalties by the old English Laws.· The church uttered its anathema and the State leveled its forfeitures, against the taking of any interest, great or small. But notwithstanding the denunciations and punishments to which it was subjected, it could not be suppressed, and it was finally, in 1545, sanctioned in England by 37 Henry VIII, chapter 9."

The right to lend money at interest is a creature of statute, not an inherent right, and in our Constitution there is a limitation of the right prohibiting contracts for interest exceeding ten per cent per annum. Many restrictions and regulations with reference to lending money and touching the security that may be taken therefor will be found in the banking laws of the United States and the several States. Laws identical in purpose and similar in detail to that involved in this appeal have been passed by more than thirty of the States of the Union and in the District of Columbia. So far as we have examined the authorities they have, except in the case of Massie v. Cessna, 239 Ill., 352, been sustained. People v. Stokes, 118 N. W. Rep., 87; Mutual Loan Co. v. Martell, 200 Mass., 482, 128 Am. St. Rep., 446; Knoxville v. Hobson, 182 U. S., 813; Hancock v. Yaden, 121 Ind., 366; State v. Peel, 36 W. Va., 802; State v. Wear, 79 Ore., 367; Commonwealth v. Crosson, 248 Penn. St. Rep., 11; In re Stevens, 170 Cal., 48; Heath v. Millican, 207 U. S., 338; · Telephone Co. v. Los. Angeles, 214 U. S., 268; Edwards v. State, 62 Fla., 40; King v. State, 136 Ga., 709; State v. Sherman, 27 L. R. A. (N. S.), 898; Wessell v. Timberlake, 116 N. E. Rep., 43 (Ohio); Commonwealth v. Puder, Supreme Court of Pennsylvania, decided April, 1918.

In the case of People v. Stokes, 118 N. W. Rep., 87, that of Massie v. Cessna, 239 Ill., 352, is distinguished, and in Mutual Loan Co. v. Martell, *supra,* the Supreme Court of Massachusetts and the Supreme Court of the United States, 222 U. S., 231 Law Ed. Vol. 56, p. 178, refused to follow it.

The States having similar laws are as follows: California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi Missouri, Nebraska, New Hampshire, New Jersey, New York, Ohio, Oklahoma, Oregon, Penn-

sylvania, Rhode Island, Tennessee, Texas, Utah, Virginia, Wisconsin, and Wyoming. The major portion of them require a bond as a condition precedent for the pursuit of the business and other regulations varying in terms, but not different in substance from those in our statute. The law on the subject enacted by Congress for the District of Columbia varies from ours in no essential particular, and contains the criticised requirement that an agent upon whom service of process may be made shall be appointed, requires a bond in the sum of five thousand dollars, and is more restrictive than the Texas statute in that it requires the bond shall be made by a surety company. U. S. Statute at Large, Vol. 37, *post* 1, p. 657. In amount of bond and other provisions this statute is not unlike that in many of the other states. The classification of occupations for the purpose of police regulation, based upon the character of surety company. U. S. Statutes at Large, Vol. 37, *post* 1, p. 657. 218 U. S., 562, 54 L. Ed., 1151, and the principle recognized in the dcisions construing our Constitution, Art. 8, Sec. 2. See Fahey v. State, 27 Texas Crim. App., 146; Texas v. Stephens, 100 Texas, 628; Craddock v. Express Co., 125 S. W. Rep., 59; Fahey v. State, 57 Texas Crim. Rep., 160.

The case of Owens v. State, 53 Texas Crim. Rep., 105, is relied on by appellant as sustaining his contention throughout. The decision condemned the statute concerning the pursuit of the business of procuring and purchasing assignments of wages. Its terms were a manifest discrimination in excepting from its operation persons of the same class as others who were affected by its restrictions. We think it was also correctly determined therein that the statute was an unauthorized and unreasonable exercise of the police power. By fixing the license tax at five thousand dollars annually, to be collected by the State, and two thousand and five hundred dollars additional by the county, it manifestly prohibited the pursuit of the business at which it was directed. The right to license and regulate an occupation which may under such restrictions be conducted in a manner not harmful to the public, does not include the right to prohibit its pursuit. Tiedeman on Lim. Police Power, Sec. 102; Freund on Police Power, Secs. 492, 494, 498; Hirshfeld v. City of Dallas, 15 S. W. Rep., 124; 8 Cyc., 886; 38 Am. Rep., 689; Millican v. Weatherford, 54 Texas, 388; Commonwealth v. Atlantic Coast Ry., 7 L. R. A. (U. S.), 1086; State v. Phelp, 35 L. R. A. (U. S.), 353. The restrictions upon the wage earner and the purchaser were unreasonable in that they put a prohibitive tax upon the purchaser, and made one subject to the tax who took as many as three assignments of wages. The distinction between that case and this one is obvious. Here the license tax is $150 a year. The obligation in the bond is contingent and not absolute. It creates no liability against one who

pursues the occupation in accordance with the law. It regulates but does not prohibit the business. A bond in substance such as that required by this statute was required by the State of Michigan as a condition precedent to engaging in the business of pawn broker. A pawn broker's occupation is lending money upon personal property pledged. That of a loan broker, under our statute, is lending money upon personal property mortgaged and upon wages assigned. The principles applicable in the control of pawn brokers by similar statutes are obviously applicable to those in the instant case. The Supreme Court of Michigan, in a pawn broker's case, held the bond, which was for five thousand dollars,—very like that in our statute,—valid, and the law not obnoxious to the various constitutional provisions urged. See Grand Rapids v. Braudy, 32 L. R. A., 116, and note. Our statutes regulate pawn brokers in a manner quite similar to the statutes here in question. See Title 102, Vernon's Sayles' Civil Statutes. The validity of these regulations has been recognized by this court in Heitzelman v. State, 26 S. W. Rep., 729. Other cases upon the subject will be found in 30 Cyc., 1165; Solomon v. Denver, 55 Pac. Rep., 199; Butt v. Paltrovich, 104 Am. St. Rep., 698; Elsner v. Hawkins, Ann. Cas., 1913-D, p. 1278, and note.

The pawn brokers statute embraces practically the same elements that are the basis of complaint against the loan brokers' statute and render the right to regulate and furnish an example of an approved method therefor. In street traffic regulations in this and other States the requirement of a bond of indemnity against violations has been held not unreasonable. See Ex parte Cardnell, 150 Pac. Rep., 348, L. R. A., 1915-B, p. 850; Memphis v. State, L. R. A. 1916-B, p. 158; Willis v. State, 182 S. W. Rep., 275; Lablank v. New Orleans, 70 So. Rep., 212; Dickey v. Davis, L. R. A. 1915-F, p. 41; Greene v. City of San Antonio, 178 S. W. Rep., 6; Ex parte Parr, 82 Texas Crim. Rep., 525, and other Texas cases there listed.

A provision permitting revocation of licenses has often been held not unreasonable. 53 Am. Rep., 620; 26 L. R. A. (N. S.), 686; Lane v. Chappell, 159 S. W. Rep., 905; Fisher v. State, 194 U. S., 361; 48 L. Ed., 1018; Davis v. Mass., 167 U. S., 43, 42 L. Ed., 31; Kissinger v. Hay, 113 S. W. Rep., 1005.

The United States Supreme Court has held that as a condition precedent for a license to do business, a foreign corporation may be required to designate an agent within the State upon whom process may be served, and that such requirement may be applied to an individual stockholder who is a non-resident. Wilson v. Seligman, 144 U. S., 339, 36 L. Ed., 42. It would seem a fair analogy that the State having authority to prescribe regulations as a condition precedent to the pursuit of a given avocation, would have the right to include as a part of the regulation the requirement that

an agent upon whom process might be served be designated as a condition precedent to the issuance of the license.

Concerning the police power of the State and the relation of the courts to its exercise, we take the following quotation from the opinion of the Supreme Court of the United States in Mugler v. Kansas City, 123 U. S., 623, 31 L. Ed., 210:

"It does not at all follow that every statute enacted ostensibly for the promotion of these ends is to be accepted as a legitimate exertion of the police power of the State. There are, of necessity, limits beyond which legislation cannot rightfully go. While every possible presumption is to be indulged in favor of the validity of a statute, Sinking Fund Cases, 99 U. S., 718 (25:501), the courts must obey the Constitution rather than the law-making department of government, and must, upon their own responsibility, determine whether, in any particular case, these limits have been passed. 'To what purpose,' it was said in Marbury v. Madison, 5 U. S., 1 Cranch, 137, 167 (2:60, 70), 'are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained? The distinction between a government with limited and unlimited powers is abolished, if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed are of equal obligation.' The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the Legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution. . . .

"No one may rightfully do that which the law-making power, upon reasonable grounds, declares to be prejudicial to the general welfare.

"This conclusion is unavoidable, unless the Fourteenth Amendment of the Constitution takes from the states of the Union those powers of police that were reserved at the time the original Constitution was adopted. But this court has declared, upon full consideration, in Barbier v. Connolly, 113 U. S., 31 (28:924) that the Fourteenth Amendment had no such effect. After observing, among other things, that that amendment forbade the arbitrary deprivation of life or liberty, and the arbitrary spoliation of property, and secured equal protection to all under like circumstances, in respect as well to their personal and civil rights as to their acquisition and enjoyment of property, the court said: 'But neither the amend-

ment—broad and comprehensive as it is—nor any other amend-
ment was designed to interfere with the power of the State, some-
times termed its police power, to prescribe regulations to promote
the health, peace, morals, education, and good order of the people,
and to legislate so as to increase the industries of the State, de-
velope its resources, and add to its wealth and prosperity.' ''

Numerous cases applying the principles herein announced to par-
ticular statutes will be found in Ruling Case Law, Vol. 6, p. 240,
note 20, p. 241, notes 1, 2 and 3; p. 243, note 13. Having no precise
limits defined in advance, the unrestrained exercise of the police
power would endanger constitutional government. It being an es-
sential and useful attribute of government, the courts can no more
arbitrarily deny its proper exercise than they can tolerate its ar-
bitrary application.

The statutes regulating loan brokers are founded on the idea that
there exists a real basis for the classification adopted, and that in the
conduct of the business of lending money on mortgages on house-
hold effects and assignment of wages there are abuses both on the
part of the lender and the borrower, which require restrictions in
the public interest.

Giving scope to the presumption in favor of the validity of laws,
having regard for the numerous instances in which the lawmaking
power of the State and Nation have found it expedient to enact
laws with the same object as that under consideration, observing that
the courts in numerous instances have upheld these laws as a legiti-
mate and proper exercise of the police power of the State, we re-
gard ourselves unauthorized to declare that the Legislature of this
State was inhibited by the State or Federal Constitution from
enbracing the subject within its police regulations, or that the
conditions existing did not furnish occasion therefor, or that the
provisions of the Act are unreasonable.

The fact that the record discloses that the appellant has not
been able to make the bond required cannot, in view of the finding
of the trial court against him, nor in view of the general application
of similar laws throughout the country as pointed out above, be
taken as conclusive that the requirement is unreasonable. Similar
bonds have been held reasonable requirements; statutes demanding
them have been enforced for years. The object of the demand is
primarily to furnish assurance that the individual who seeks the
license is of a type that will conduct the business permitted in a
legal, manner, and secondarily, to furnish indemnity to those in-
jured by his failure to do so. This court upheld the same statute
in the case of Ex parte Hutsell, 78 Texas Crim. Rep., 589. The
opinion was not unanimous, though there was no dissenting opinion
written. There has been development of the subject since that time,
and in view of the dissent of the Presiding Judge, for whose opinion
the writer has great respect, the subject has been gone into with

as great detail as practicable, with the result that our conclusion is that the law is not shown invalid, and that the judgment entered should be affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE.—That the Legislature may regulate "loan brokers" is not questioned. But I cannot concur in sustaining this Act of that body. I may later write.

ON REHEARING.

October 22, 1919.

LATTIMORE, JUDGE.—The original opinion in this case is devoted mainly to a discussion and decision of the question as to whether the business of appellant is such as is properly within the regulatory control of the State, in the exercise of its police power. We have no doubt that the business of the appellant is one whose regulation is within the police power of the State, and that reasonable restriction thereof may be provided by the Legislature; but under our Constitution such restriction may not be such as to make it impossible to conduct a legitimate business, or to arbitrarily deprive a citizen engaged in such business, of his right to that equal protection under our laws which is guaranteed by our Bill of Rights, nor take from him his right to the due course and process of law, which is also guaranteed him by our Constitution.

Giving particular attention to the language and requirements of Chapter 28, Acts of the Regular Session of the Thirty-fourth Legislature, which contains the law on this subject, we concede that the requirement of a bond as a prerequisite to engaging in business as a loan broker, is proper, provided the amount and conditions of such bond be not improper. Nor would it be unreasonable for such a law to require an artificial person, such as a coporation, to appoint an agent or attorney-in-fact, upon whom service of legal process may be had, though we are unaware of any law in this State making such provision in the case of a domestic corporation, in case of any other corporation than that described in this Act. In our opinion, however, to single out the loan broker, and to define him as one who lends money upon personal securities, who takes assignments of wages, and chattel mortgages upon houshold goods, and to then require him to give a bond for $5000, made renewable every year, and conditioned that he will faithfully comply with each and every requirment of the law governing such business, and pay any judgment which may be obtained against him, as is provided in Sections 2 and 3 of the Act under consideration; and then to further write in Section 7 of said Act, as a part of "The law governing

such business," that such private . citizen shall file with the county clerk of each county where he does business, a written, irrevocable power of attorney, naming the county judge of such county as his duly authorized agent, and attorney-in-fact, for the purpose of accepting service for him or it, or being served with citation in any suit brought against him or it, in any court of this State, . *"and consenting that the service of any civil process upon such county judge as his or its attorney for such purpose in any suit or proceeding, shall be taken and held to be valid, waiving all claim and right to object to such service, or to any error by reason of such service,"* is to attempt to place such obligation in said bond as to make it unreasonable and discriminatory. No citizen of this State can be compelled to relinquish or waive his right to his day in court as a condition to engaging in any lawful business. Nor will a law requiring a bond seeking to impose such condition, be upheld by us. We are not surprised that the bonding companies and solvent citizens, as is disclosed by this record, refused to make for appellant the bond required by this Act. Under its conditions, and the terms of this law, the county judge might accept service, or be served with citation, in a suit against appellant in the most remote county in the State, and in a lawsuit wholly foreign to the loan-brokerage business, and in such case, even without knowledge on the part of appellant of said suit, or service, or accepted service, a judgment might be rendered against him and his bondsmen for any amount, and even though the service be defective, erroneous, and illegal, appellant and his sureties would be powerless, for by the express provisions of the law, such written appointment of the county judge as his attorney-in-fact, must contain appellant's consent to such service, and his waiver of any right to object to any error therein. Notwithstanding the fact that as to the ordinary citizen, erroneous and defective service renders the judgment either void or voidable, as the case may appear, for some reason effort is here made to take from the man engaged in the business of loan broker such right, and he is thus penalized and denied the right of equal protection of the law, and deprived of his property and privileges without due course of law. There is no provision in this law requiring the county judge to notify, or in any other way acquaint the loan broker with the fact that he has accepted service or been served with citation in any suit against him, which fact may result from the consideration that it would do the loan broker no good, inasmuch as he could not take any steps to release himself by reason of any defect in the citation. It might be very questionable, if necessary to a decision of this case, as to whether the county judge could in any event be compelled to act as such agent or attorney-in-fact, or put himself to any trouble by reason thereof, or take any action with regard thereto. Such function is nowhere prescribed in our Constitution and laws as a part of the

duty of the county judge. This, however, is aside from the decision of the questions involved.

Not only do the conditions of the law above mentioned appear unreasonable and discriminatory, but it is further provided in Section 9 of said Act, that any judgment obtained against a loan broker under the articles of this Act, *or under the laws of Texas,* shall be collectible out of the bond provided for.

It thus appears that the bond and sureties would not only be held for the acts of appellant while actually engaged in the line of his business as a loan broker, but also for any other sum for which he might be liable under the laws of this State.

It does not appear to us to be necessary to discuss this act any further. There is grave doubt in our minds as to whether or not the individual citizen of this State, who is given the right under reasonable and wise provisions of law, to be served with citation, and thereby have knowledge brought home to him of a pending suit in this State, can be compelled, if he engage in a particular line of business, to relinquish that right of personal service. We know of no law or authority in this State holding that he may be.

We are not permitted to concern ourselves with the question as to whether the loan broker is necessary and useful in a community, to meet the wants of those who lack ability to measure up to the financial standing required by the bankers, nor as to whether the loan shark is an evil that should be effectively banished from our midst. Evils must be met and abolished or minimized, according to the wisdom of our Legislature, but within the limits fixed by our Constitution.

Believing that those provisions of this law which fix the conditions of the bond, and require a waiver of the loan broker's right to object to defective service, and permit the payment of other judgments out of the bond, deny a citizen equal protection, and seek to deprive him of his property and privileges without due course of law, we hold said Act in violation of our Constitution. The case of ex parte Hutsell, 78 Tex. Crim. Rep. 589, holding this law constitutional, is hereby overruled.

The motion for rehearing is granted, and the cause is reversed and ordered dismissed.

*Reversed and dismissed.*