CITY OF SAN ANTONIO et al. v. BESTEIRO et al. (No. 6191.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 5, 1919. Rehearing Denied March 5, 1919.)

1. LICENSES ⊂⊃14(2)—REGULATION AND LICENSING OF AUTOMOBILES.

Plaintiffs' business of leasing or hiring driverless automobiles to the general public *held* to be of a public nature, to contemplate and in fact make use of the streets of defendant city, and to affect the public welfare, so as to be subject to license and reasonable regulation by the city, under Gen. Laws 1917, c. 90, § 25 (Vernon's Ann. Civ. St. Supp. 1918, art. 7012½h), and chapter 207, § 23, subd. 2 (Vernon's Ann. Pen. Code Supp. 1918, art. 820r), and San Antonio Charter, §§ 90, 98, 99.

2. LICENSES ⊂⊃14(2)—REGULATION AND LICENSING OF DRIVERLESS AUTOMOBILES — "PRIVATE USE."

The business of renting driverless automobiles to the public for temporary use over the streets of defendant city is not the "private use" by an individual of his property over which the police power of the city cannot be exercised.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Private Use.]

3. APPEAL AND ERROR ⊂⊃179(1)—REVIEW—ISSUES NOT DETERMINED BY TRIAL COURT.

Issues pleaded, but not ruled upon by the trial court, are not properly before the court on appeal for review.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by M. Besteiro and others against the City of San Antonio and others. From an order granting a temporary injunction, defendants appeal. Order reversed and cause remanded.

R. J. McMillan, of San Antonio, for appellants.

Lewright & Douglas, of San Antonio, for appellees.

SWEARINGEN, J. This suit was instituted by M. Besteiro, L. J. Overcash, and R. Sere against the city of San Antonio, Tex., Sam C. Bell, mayor, as mayor of said city, J. R. Lambert, Sr., Andres Coy, Phil Wright, and L. Heuermann, as commissioners of said city of San Antonio, for the purpose of enjoining the city and its mayor and commissioners from enforcing an ordinance adopted and enacted by the city of San Antonio on July 29, 1918, entitled:

"An ordinance for the licensing and regulation of driverless automobiles, hired or leased to the public for use on or over the streets or thoroughfares of the city of San Antonio."

The city interposed a general demurrer to the sufficiency of the petition, and specially answered. The general demurrer was overruled at a hearing upon the application for a temporary injunction, and evidence was introduced. The trial court held that the character of the business conducted by the appellees, described in the pleading and proven by the evidence, was not such as to be subject to license and regulation by the city of San Antonio because, in the opinion of the trial court, the business was private, the conduct of which does not affect the public safety or welfare. Accordingly a temporary injunction was granted, restraining the city and its commissioners from enforcing the ordinance. From this interlocutory order appellants have appealed.

The nature of the business is thus described in appellees' first amended petition:

"In September, 1917, plaintiffs began business in said city of San Antonio at No. 735 East Houston street and since that date plaintiffs have carried on their business at said place, upon premises leased and controlled by them, in which the city of San Antonio owns and has no interest whatsoever. Plaintiffs have been conducting, and are now conducting, their business at said place as the owners of certain Ford automobiles, 55 in number, which they keep and maintain at said place for the use of the public at large, upon reasonable prices, terms, and conditions. Plaintiffs never furnish a driver to operate any such automobile, but they rent or hire their said cars to such persons as apply therefor and as satisfy plaintiffs and their agents that they are competent and able properly to run said cars and are financially responsible, and are trustworthy. Plaintiffs and their agents have at all times used due care in deciding or determining whether or not to hire or rent their said cars to members of the public applying for the rental or hire thereof.

"Since plaintiffs first began to engage in said business of hiring or renting cars without drivers, to the public at large, they have made more than 10,000 rentals, and, as far as plaintiffs know and believe, up to the present time not one personal injury accident has resulted from the operation of their said cars by the said lessees or bailees thereof; moreover, plaintiffs have knowledge of only three instances in which persons operating said cars under lease or bailment contract with plaintiffs have injured the property of third persons. Plaintiffs do not rent or hire their said cars to married women save and except with the written approval and consent of their husbands, nor do plaintiffs hire or rent their said cars to persons under 21 years of age.

"Owing to the care with which plaintiffs have conducted their said business and to their con-

stant attention to the upkeep and proper conduct of said business, they have succeeded in building up, and are now doing, a very extensive business, and their said cars are being daily used and driven by members of the public at large, not agents, servants, or employés of plaintiffs, and plaintiffs are now affording to the public, especially those financially unable to purchase and maintain cars of their own, a superior facility for both business and pleasure use. Plaintiffs' said cars are constantly being rented or hired by United States Army officers and others in the service of the United States government, who are temporarily stationed in or near the city of San Antonio, Tex. A very large portion of the business thus transacted by plaintiffs is done by them with persons who make use of said hired or rented cars in going to and from Leon Springs, Kelly Field, and other places outside of the city of San Antonio, Tex., which are not accessible by street car. Said business of plaintiffs is now lucrative and profitable, principally because of the prudence and economy with which plaintiffs are conducting same.

"Plaintiffs have never sought, obtained, nor exercised, nor are they now exercising or making use of, any franchise or other special privilege or immunity; on the contrary, their said business is one of common right in which any member of the public at large is entitled to engage at any time as of right, and plaintiffs now have in said city of San Antonio, Tex., various competitors engaged in the same line of business.

"Plaintiffs do not themselves, either in person or by servants, agents, or employés, make use of or operate any of their said cars upon any of the streets or alleys of the city of San Antonio, Tex. Plaintiffs do not operate any of said cars for hire, either as jitneys, as special service cars, or otherwise. Every person who hires or rents any of said cars from plaintiffs is always required to drive and operate said car for himself, and without assistance or aid of any kind from plaintiffs, their agents, servants, and employés, taking said cars from plaintiffs' said place of business and returning same at the end of the time contracted for by said person renting or hiring same."

The nature of the business is, by the evidence, substantially proven as alleged:

"As to the manner of running this business, we run Ford cars without drivers, renting them. We have no drivers. These cars are not operated on the streets of the city for the carrying of passengers. We do not permit our cars to be used as service cars, or jitneys. If a man tries to make use of them in that way we call them in. In the contract which we make with parties renting our cars it is stipulated that the cars are to be used by them personally.

"As to the number of rentals we have made of cars since we have been in the business, it is around 15,000, I guess about 14,900, say 15,000.

"Our place of business is No. 733 East Houston street. We lease that property, lease it from Mrs. Finlay. We were at No. 735 about four months, and we moved to No. 733, taking a two-year lease on No. 733 East Houston street. We have never used or occupied any of the city property, plazas, or other places, for our business; we confine our entire business to leased premises. We will not deliver a car out on the street for a man; we never put a car out on the street. The party must himself get in and drive it out; they must show us that they can handle the car in our lot before they go out. This past week we took three or four men out of cars that could not handle them.

"As to whether we have had personal injury accidents in the 15,000 rentals or hirings of cars, not a single personal injury has been reported to us. There have only been four or five property claims presented as a result of accidents all put together.

"As to whether we require a deposit from parties who rent our cars, we do, we require from $25 on up. For instance, if a man wants a car to go to Lavernia, I tell him the deposit we require. Of enlisted men in the army we require $20 deposit, and officers and men of good standing in San Antonio, sometimes we let them out without a deposit—not in all cases.

"I have a printed form of the contract which we require of parties renting our cars, but haven't it with me; I can get one.

"As to how many automobiles and trucks we were running at the time we brought this suit originally, last summer, we were operating 57, I think. At the present time we are operating about 23 or 24 cars.

"As to whether we rent our cars to married women, or to minors, we do not; we never rent to a boy under 21 years old, nor to a married woman, unless she has a letter from her husband.

"As to whether our business is principally to civilians, or to officers and privates, it is an indiscriminate business; I suppose 60 per cent. of our business is with army people.

"As to where the people drive our cars, all I know is what they say. The cars are for their own personal use, of course; a great many officers going from Kelly Field to Ft. Sam Houston, a great many of them use cars when they are taken from here, transferred from here, they keep them all day long, and some go to New Braunfels."

[1] Section 99 of the San Antonio charter contains express authority from the Legislature to license, regulate, and inspect all business carried on in San Antonio whenever and wherever the commission shall deem such regulation, inspection, and license necessary or proper for the good order, public health, public safety, or general police regulation of said city.

The city has, by the enactment of the ordinance herein assailed, exercised the power given it by the above section of its charter. The section of the charter itself is not claimed to be in violation of the Texas Constitution. The contention is that the business of appellees is a private and not a public one over which alone the police power can be exercised. In our opinion, the business affects the general public as the pleadings and evidence clearly disclose. The appellees for their own profit offer numbers of automobiles for use to the general public for hire. It is apparent that the general public welfare requires that reasonable precaution

474 SOUTHWESTERN REPORTER (Tex.)

be taken to protect the using public against dangerous machines, and that precautions be taken to prevent injury and inconvenience to the traveling public by the indiscriminate use of these automobiles, and it is also apparent that this business may be used for immoral purposes. In fact, the testimony of appellees' witness shows that the appellees themselves, realizing the danger from careless use of their automobiles and the possibility of use for immoral purposes, have undertaken to exercise a police power themselves, and to that end have established rules by which it is sought to rent to only careful and competent lessees, and refuse to rent to single women, and will rent to married women only when joined by their husbands. The nature of the business is public. The public safety and welfare may require its regulation.

[2] The argument that appellees in effect sell their automobiles, and that the entire transaction is completed upon their own private property, is unsound. The business of renting automobiles to the public for temporary use over the streets of San Antonio is not the private use by an individual of his property.

In addition to this authority to exercise police power over appellees' business, granted the city in section 98 of the charter, the general laws of the state expressly grant the city the authority to regulate the business conducted within it of offering automobiles for hire. General Laws of 1917, p. 426, § 25 (Vernon's Ann. Civ. St. Supp. 1918, art. 7012½h). General Laws of 1917, p. 474, § 23, subd. 2 (Vernon's Ann. Pen. Code Supp. 1918, art. 820r). There can be no doubt that appellees' business is to offer automobiles for hire to be used upon the streets of San Antonio.

Then again, the authority of the city of San Antonio to regulate the use of its streets is granted in section 90 of its charter. This power to regulate the use of its streets is not denied by appellees, but they contend that in their business they do not use the streets. They insist that they lease the car on their own premises, and the lessee exercises the rights of an owner, and as such has the inalienable right to drive the car upon the streets. It is true the lessee has the right to drive a car upon the streets, and that he cannot be charged a license by the city, for the state laws forbid. In the present case, no effort is made to license or regulate this individual lessee. The license and regulation here attempted is that of the business of appellees. The contention that the use of the streets forms no part of the business conducted by appellees is sophistical. The chief element of value to this business is that their automobiles can and will be used upon the streets of the city. If the use of their automobiles should be confined to appellees' private property, the city could exercise the police regulation granted in section 99. But the business is not to limit the automobiles to use only on appellees' private property. The quintessence of the business is to obtain a rental from the use of the city's streets by its automobiles. That this use of the streets is contemplated, intended, and forms the real thing of value to appellees' business is so obvious as to pretermit discussion. The business of appellees is to derive a profit for themselves by the operation of their automobiles over the streets of San Antonio just as the street railway, jitney, and service car companies do. The fact that these last-mentioned companies have the driving done by employés and the appellees have it done by lessees does not change the result that appellees' business is to burden the streets in the conduct of its business. There is greater necessity, it seems to us, for the city to regulate this use of the streets when the driving is done by lessees instead of employés. Where the automobiles are driven by employés over whom the employer has supervision and control, there is likely less danger to the public, and the immoral uses possible can be more readily checked than where the automobiles are promiscuously, if not indiscriminately, let to the public. Since the business contemplates and does in fact make use of the streets, the business is subject to license and regulation by the city.

The authority of the city to regulate the jitney and service car companies in their use of the streets, has been often attacked with the Bill of Rights, the Constitutions both of Texas and the United States, and also with the rule that even the police power of a municipality must be exercised in a reasonable manner commensurate with the necessity therefor. But all such attacks have failed.

The right of regulation conferred upon the city of San Antonio by sections 90 and 99 of the charter and by General Laws 1917, p. 426, § 25, and General Laws 1917, p. 474, § 23, subd. 2, have been thoroughly discussed by the opinions written for this court by its Chief Justice in the Green, Peters, and Craddock Cases. Greene v. City of San Antonio, 178 S. W. 7; Peters v. City of San Antonio, 195 S. W. 989; Craddock v. City of San Antonio, 198 S. W. 634. We can add nothing to the discussions found in the cases cited except to say that appellees' business falls within that class affecting the public welfare and is subject to the city's regulation. Like the exercise of all police power, it must be reasonable.

[3] Since the trial court did not rule upon the issues pleaded, to the effect that the license fee was a tax, and not a license fee; that the requirement of a statement of assets and liabilities was unreasonable; that the requirement of bonds and the amounts thereof was unreasonable; and that other

stipulations in the ordinance were unreasonable—those questions are not properly before us for review. The trial court's holding that the nature of appellees' business was such that the city had no authority to regulate that business, we think, is error.

The order granting the temporary injunction is reversed, and the cause remanded.