**CITY OF SAN ANTONIO et al. v. FETZER et al. (No. 6806.)**

(Court of Civil Appeals of Texas. San Antonio. May 10, 1922. Rehearing Denied June 7, 1922.)

1. **Municipal corporations ⬤═661(1)—Control of streets rests in Legislature as trustee for public, subject to individual's right to use same for business or pleasure.**

Subject to the individual's right as a member of the public to the free use of the city streets ·in the normal pursuit of his private or personal business or pleasure, the control of the streets rests in the Legislature acting as trustee for the public, the right of which at large is paramount to the natural right of the individual.

2. **Constitutional law ⬤═63(2) — Legislature may delegate power to control streets.**

The Legislature may delegate the control of city streets to municipal corporations, the local governing bodies of which may then exercise such power to the same extent and for the same purposes as the Legislature could.

3. **Municipal corporations ⬤═661(2) — City's power over streets limited only by Constitution and laws.**

The city's power over its streets is limited only by the Constitution and general laws of the state, and its acts thereunder will be upheld unless in contravention of some constitutional or statutory provision (Const. art. 11, § 5; Vernon's Sayles' Ann. Civ. 1914, art. 1096d).

4. **Municipal corporations ⬤═661(1)—May determine to what extent or on what streets extraordinary individual use thereof will be permitted.**

While neither the Legislature nor the city may take away or unreasonably abridge the citizen's natural rights to use the streets in the normal pursuit of his private or personal business or pleasure, they may determine to what extent or on what streets such an extraordinary use as encroaches on, the paramount rights of the public at large will be permitted.

5. **Municipal corporations ⬤═689(2)—District court cannot enjoin enforcement of ordinance regulating use of streets by jitneys even if effect would be to destroy business.**

While a court of appropriate jurisdiction may determine the validity of a city ordinance, where it clearly appears that private rights are sought to be unconstitutionally interfered with, the district court may not enjoin enforcement of an ordinance regulating the conduct of the "jitney" business, even if, by restricting their routes to fewer streets than before, they may be put out of business; operators thereof having no inherent or natural right to the use of the streets for the purpose of conducting such business.

6. **Municipal corporations ⬤═592(1) — Ordinance, confining operation of motor busses to particular streets, held not in violation of general highway laws.**

An ordinance, requiring that persons operating motor busses for hire confine their oper-

ations to certain streets, *held* not in conflict with the general laws relating to vehicular traffic over the state highways (Gen. Laws 1917, c. 207, § 23, subd. 2 [Vernon's Ann. Pen. Code Supp. 1918, art. 820r], and Gen. Laws 1917, c. 190, § 25 [Vernon's Ann. Civ. St. Supp. 1918, art. 7012½h]).

7. **Municipal corporations ⬤═703(1)—City of San Antonio may restrict operation of motor busses to particular streets.**

Under Const. art. 11, § 5, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1096a et seq., the commissioners of the city of San Antonio were within their prerogatives in passing an ordinance restricting the operation of motor busses to certain streets, as such act does not transcend the city's power, contravenes no constitutional or statutory provision, and interferes with the private, natural, or inherent rights of no person.

8. **Municipal corporations ⬤═63(1, 2)—Courts will not pass on necessity, wisdom, policy, etc., of city ordinance.**

The necessity, wisdom, policy, expediency, economics, or reasonableness of a city ordinance are matters for the exclusive determination of the commissioners enacting it, and their action is final. Nor can courts inquire into the motives and integrity of the commissioners in enacting an ordinance.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Suit by A. Fetzer and others to restrain the City of San Antonio and its officials from enforcing an ordinance. From a temporary injunction, defendants appeal. Reversed, and temporary injunction set aside.

T. H. Ridgeway and R. L. Marshall, both of San Antonio, for appellants.

John Sehorn, Edwin Sehorn, and Eskridge & Williams, all of San Antonio, for appellees.

SMITH, J. This is an appeal from a temporary injunction restraining the city of San Antonio and its officials from enforcing an ordinance which seeks to regulate the conduct, in San Antonio, of the business of operating motor busses, now generally known as "jitneys," as common carriers for hire, and denying to appellees and others engaged in that business the use of certain streets of the city for that purpose. It was provided in the ordinance that those engaged in that business must confine their operations to certain streets which were designated by name, and they were prohibited from operating on any other streets than those designated. It was alleged that appellees and others are owners and operators of jitneys on the city streets; that they have a natural and inherent right to operate such business on certain of said streets, and that this right was recognized by the state law, and the city charter and ordi-

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

nances, for which they were duly licensed by the city under an ordinance of March 8, 1915, as subsequently amended; that by the provisions of the ordinance attacked, which was adopted on December 1, 1921, and amended on January 30, 1922, by which the ordinance of March 15, 1915, was repealed, all existing jitney routes were abolished and new routes prescribed, and the owners prohibited from operating on any streets other than those designated in the new routes; that the proposed new routes were so located that jitneys cannot be operated thereon, in the transportation of passengers, at a profit, and that to enforce the new ordinance would have the effect of destroying and prohibiting or seriously injuring appellees' jitney business. It was further alleged, according to the statement of the case made by the court below, that:

"The complainants further alleged that said ordinances are void, for the reasons, it is alleged, in substance, that said ordinances were not passed by the defendant commissioners in the exercise of a bona fide discretion, with the view or purpose of subserving the public safety or convenience in the use of the public streets of the city by relieving or preventing a congestion of traffic on the streets, but were passed without regard to that consideration; that there was no congestion of traffic necessitating the passage of said ordinances; that said defendants knew there was no such congestion nor necessity; and that the recitals, in said ordinances, of such congestion and necessity were false, and made for the purpose of covering up the real purpose of said ordinances, which, it is alleged, was to destroy the jitney business in said city, and to create a monopoly of the street transportation of said city in the San Antonio Public Service Company. It is further alleged, in substance, that the passage of said ordinances was at the request of said company, and in pursuance of an agreement between said company and the defendant commissioners, whereby the said company agreed to reduce its street car fares if the said ordinances should be passed.

"It is further alleged by complainants that said ordinances are void because, it is alleged, they are unreasonable, in that there is and was no congestion of traffic on the streets, or other reason, requiring or necessitating such action in the interest of the public safety or convenience.

"It is further alleged that the action of the defendant commissioners in passing said ordinances was arbitrary and capricious and discriminating; that the ordinance complained of, if carried into operation, would have the effect, and were intended by the defendant commissioners to have the effect, of creating in the San Antonio Public Service Company a practical monopoly of passenger transportation in said city; that said ordinances contravene the Fifth and Fourteenth Amendments to the Constitution of the United States, in that they restrict the personal liberty of the complainant jitney operators, destroy their property rights without due process of law, and deny them the equal protection of the law."

Section 5, article 11, of the Constitution, and the following general laws of the state, are relied upon as delegating authority to the city for the passage of the ordinance:

"Art. 1096d. *Full Power of Local Self-Government: Enumerated Powers.*—That by the provisions of this Act it is contemplated to bestow upon any city adopting the charter or amendment hereunder the full power of local self government, and among the other powers that may be exercised by any such city, the following are hereby enumerated for greater certainty: * * *

"To prohibit the use of any street, alley, highway or grounds of the city by any telegraph, telephone, electric light, street railway, interurban railway, steam railway, gas company, or any other character of public utility without first obtaining the consent of the governing authorities expressed by ordinance and upon paying such compensation as may be prescribed and upon such condition as may be provided for by any such ordinance. * * *

"To have exclusive dominion, control and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards, and public grounds of such city. * * *

"To control, regulate and remove all obstructions or other encroachments or incumbrances on any public street, alley or ground. * * *

"To license, operate and control the operation of all character of vehicles using the public streets, including motorcycles, automobiles or like vehicles, and to prescribe the speed of the same, the qualification of the operator of the same, and the lighting of the same by night and to provide for the giving of bond or other security for the operation of the same.

"To regulate, license and fix the charges of fares made by any person owning, operating or controlling any vehicle of any character used for the carrying of passengers for hire or the transportation of freight for hire on the public streets and alleys of the city. * * *

"Art. 1096e. *Effect of Enumeration of Powers.*—The enumeration of powers hereinabove made shall never be construed to preclude, by implication or otherwise, any such city from exercising the powers incident to the enjoyment of local self-government, provided, that such powers shall not be inhibited by the Constitution of the state." Vernon's Sayles' Civ. Stats. vol. 1, p. 530.

[1] The streets of the cities of this country belong to the public. Primarily, every member of the public has the natural right to the free use of such streets in the normal pursuit of his private or personal business or pleasure. In his errands of pleasure, he may use these highways to his heart's content. If he is in the dry goods or grocery business, or operates a laundry, or ice plant, or dairy, or bakery, or is engaged in any other business, he has the right to use the streets in delivering to his customers his dry goods, groceries, laundry, ice, milk, bread, or any other stores or products of his industry, or for any other purpose incident to such business. These rights, being inherent in him as an American citizen, can-

not be taken away from him, or unreasonably restricted or regulated. Subject to this freedom of personal conduct inherent in the individual, however, the control of the streets of the cities rests in the Legislature, acting as trustee for the public. The right of the public at large to the free use of the streets is paramount to the natural right of the individual, and the Legislature, in its capacity as trustee, has the power to reasonably regulate this use, to the end that the public shall enjoy the maximum benefits thereof. If in its free use the right of the individual citizen conflicts with the paramount rights of the public at large, then the rights of the. one must yield to those of the many.

[2-4] The Legislature may delegate to municipal corporations the control of the streets of such municipalities, and when the power is so delegated the local governing body (the board of city commissioners in the case of the city of San Antonio) may exercise that power to the same extent and for the same purposes as the Legislature could do. The power of the city in exercising such control is limited only by the Constitution and general laws of the state, and its acts thereunder will be upheld unless in contravention of some provision of the Constitution or general laws. Section 5, art. 11, State Constitution; article 1096d, Vernon's Statutes. But neither the Legislature nor the city commissioners has the power to take away or unreasonably abridge, the natural rights of the citizen to the use of the streets in the manner and for the purposes we have set forth above.

But this inherent right of the citizen to the use of the streets ceases abruptly when he reaches the maximum of such use in the ordinary or normal pursuit of his personal pleasure or private business. Passing that point, he exceeds his natural right, and burdens the streets with an unusual use, thus encroaching upon the paramount rights of the public at large. It is at this juncture that the city commissioners, as substitute trustee for the public, enters with the power to determine whether or not, or to what extent, or upon what streets, this extraordinary use will be permitted. This doctrine, now universally recognized, is better expressed by the Supreme Court of Appeals of West Virginia, in Ex parte Dickey, 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F, 840, quoted with approval by the Supreme Court of Kansas in Decker v. City of Wichita, 109 Kan. 796, 202 Pac. 89, a jitney case:

"The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stagecoach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual, and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities."

The Supreme Court of Washington, in Hadfield v. Lundin, 98 Wash. 657, 168 Pac. 516, L. R. A. 1918B, 909, Ann. Cas. 1918C, 942, after quoting with approval from the opinion in the Greene and other cases hereinafter cited, and citing many others to the effect that city councils may prohibit the use of designated streets by jitneys, says:

"These cases, though involving regulatory statutes or ordinances, all recognize and are based upon the fundamental ground that the sovereign state has plenary control of the streets and highways, and, in the exercise of its police power, may absolutely prohibit the use of the streets as a place for the prosecution of a private business for gain. They all recognize the fundamental distinction between the ordinary right of a citizen to use the streets in the usual way and the use of the streets as a place of business or main instrumentality of a business for private gain. The former is a common right, the latter an extraordinary use. As to the former the legislative power is confined to regulation, as to the latter it is plenary and extends even to absolute prohibition. Since the use of the streets by a common carrier in the prosecution of its business as such is not a right, but a mere license or privilege, it follows that the Legislature may prohibit such use entirely without impinging any provision either of the state or federal Constitution."

[5] The injunction seems to have been granted in this case upon the theory that owners of jitneys have a natural, inherent right to the use of the streets of the city for the purpose of conducting their business thereon as common carriers of passengers for hire—as a public utility in other words. If, as a matter of law, the owners of this or any other public utility had such an inherent or natural right as the trial court yields to appellees here, the question presented would be more difficult, because a court of appropriate jurisdiction undoubtedly has the power to determine the validity of a city ordinance where it clearly appears therefrom, or from the facts of its operation, that private rights are sought to be interfered with to such an extent as to invoke the condemnation of the state Constitution. But we do not perceive that these questions enter into this case at all, for the reason that so far as we have ascertained no appellate court of this or any other state has held that operators of jitney busses for hire have an inherent or natural right to the use of the streets of cities for the purpose of conducting their business thereon, while this court,

in at least two cases, which were before the court below in the trial of this case, has clearly and emphatically held that such concerns have no such natural right. Greene v. City of San Antonio (Tex. Civ. App.) 178 S. W. 6; Peters v. City of San Antonio (Tex. Civ. App.) 195 S. W. 989. The court below, and counsel, have taken much pains to discredit the effect of those two decisions by arguing at great length that the holding therein that persons or corporations situated as appellees have no inherent or vested rights in the use of the city streets for the purpose of plying their trade thereon was not necessary to those decisions, and was therefore obiter dictum. But, as we view those cases, that holding was the very foundation of those decisions, and was fundamentally essential thereto. The decision in the Greene Case, which has been approved by the Supreme Court of Texas, by the refusal of a writ of error, has been cited in 25 different cases in this country which have come to our notice, and in not a single instance did it occur to the courts handing down those decisions to suggest that the holding in question was dictum. And it should be added that the decision of this court in the Greene Case, or some particular holding therein, was approved in all, and no holding therein disapproved in any, of the 25 cases mentioned, embracing decisions of the Supreme Courts of the states of Arkansas, Tennessee, Iowa, Kansas, Oregon, Washington, Louisiana and Georgia, the United States District Courts of Louisiana and Washington, the Court of Appeals of California, the Texas Court of Criminal Appeals, and several of the Texas Courts of Civil Appeals. Willis v. City of Ft. Smith, 121 Ark. 606, 182 S. W. 275; Auto Transit Co. v. Ft. Worth (Tex. Civ. App.) 182 S. W. 685; Dallas v. Gill (Tex. Civ. App.) 199 S. W. 1144; City of San Antonio v. Besteiro (Tex. Civ. App.) 209 S. W. 472; Zucht v. King (Tex. Civ. App.) 225 S. W. 267; Juhaen v. State, 86 Tex. Cr. R. 63, 216 S. W. 873; Ex parte Stallcups, 87 Tex. Cr. R. 203, 220 S. W. 547; Ex parte Bogle (Tex. Cr. App.) 179 S. W. 1193; Memphis v. Ryals, 133 Tenn. 83, 179 S. W. 631, L. R. A. 1916B, 1151, Ann. Cas. 1917C, 1056; Craddock v. San Antonio (Tex. Civ. App.) 198 S. W. 634; Huston v. Des Moines, 176 Iowa, 455, 156 N. W. 883; Lutz v. N. O. (U. S. Dist. La.) 235 Fed. 978; Schoenfeld v. Seattle (U. S. Dist. Wash.) 265 Fed. 726; Ex parte Lee, 28 Cal. App. 719, 153 Pac. 992; Desser v. Wichita, 96 Kan. 820, 153 Pac. 1194, L. R. A. 1916D, 246; Decker v. Wichita, 109 Kan. 796, 202 Pac. 89; Cummins v. Jones, 79 Or. 276, 155 Pac. 171; State v. Seattle Co., 90 Wash. 416, 156 Pac. 837; Hadfield v. Lundin, 98 Wash. 657, 168 Pac. 516, L. R. A. 1918B, 909, Ann. Cas. 1918C, 942; Rosa v. Portland, 86 Or. 438, 168 Pac. 936, L. R. A. 1918B, 851; Le Blanc v.

New Orleans, 138 La. 243, 70 South. 212; N. O. v. Le Blanc, 139 La. 113, 71 South. 248; Hazleton v. Atlanta, 144 Ga. 775, 87 S. E. 1043; Id., 147 Ga. 207, 93 S. E. 202; Ex parte Parr, 82 Tex. Cr. R. 525, 200 S. W. 404.

In the opinion in the Greene Case, which was written by Chief Justice Fly, it was said upon the very question now under consideration:

"No individual has the inherent right to use a street or highway for business purposes. No man has the right to use a street for the prosecution of his private business, and his use for that purpose may be prohibited or regulated as the state or municipality may deem best for the public good."

After citing numerous authorities in support of the foregoing, the opinion proceeded:

"So in this case appellant has never had any vested right to use the streets of San Antonio to engage in the business of a common carrier of passengers for hire, and no right of his is infringed or invaded by the ordinance requiring certain things to be done in order to enter into business on the streets, which have, at the expenditure of large sums, been placed by the city in prime condition for automobile travel. The streets belong to the public, the city being its trustee, and no private individual or corporation has a right to use such streets for the prosecution of a business without the' consent of the trustee and a compliance with the conditions upon which the permission to so use them is given. There could be no greater use of the streets for business purposes than that in which appellant is engaged. He must move swiftly along the streets, obstructing the passage, to some extent at least, of those who have a vested right to use the streets for passage, from point to point; he will, by building up and conducting his private business entirely on the streets, be wearing and wasting that which was primarily intended for the passage of persons along the streets, and to obtain these great privileges he must comply with the conditions fixed by the city of San Antonio."

These very extracts from the opinion in the Greene Case, which was apparently the pioneer in applying this doctrine to jitneys, were quoted with distinct approval by the Supreme Court of Louisiana in the Le Blanc Case, the Supreme Court of Kansas in the Dresser Case, the Supreme Court of Oregon in the Cummins Case, the Supreme Court of Washington in the Hadfield Case, in which an ordinance prohibiting the operation of jitneys on any of the streets of Oregon City was upheld, and in other courts of equal authority. Many other courts throughout the nation, in the cases we have cited, while not quoting from, have cited with distinct approval the doctrine laid down in the Greene Case, while, on the other hand, as stated, no other appellate court in the United States whose decisons have come to our notice, has disapproved or questioned the soundness or accuracy of that doctrine as defined in

that case. Many other courts of high authority, without reference to the Greene Case, have announced the doctrine therein laid down, and this court, in the later case of Peters v. City of San Antonio, 195 S. W. 989, reiterated and emphasized the doctrine. In the latter case the ordinance upheld was similar in all essentials to the one here attacked. The only difference in the two, it seems, is that in the original ordinance the jitneys were restricted to certain routes, over certain streets of the city, while in the ordinance now assailed the routes are changed and restricted to fewer streets. The claim is made here that the new routings will have the effect of driving the jitney operators out of business, or at least will render their business much less profitable than it was under the former routing. But this same contention was made in the Peters Case, as were most of the others made in this case. All of these contentions were denied in the Peters Case, and the ordinance was held valid as against them. The rulings in that case were based primarily upon the broad principle, now universally recognized and upheld, that the operators of jitneys as common carriers of passengers for hire have no inherent right to the use of the streets for the conduct of their business, and that the municipality has the power to prohibit such use of any street or streets the city council may designate, even if by so doing it destroys that business. In reiteration of this doctrine it was said in the opinion in the Peters Case, also written by Chief Justice Fly, that:

"If the city can ordain that no jitneys can be run for hire in San Antonio, as the authorities unite in saying it can, it certainly can grant the use of some streets, and refuse the use of others, for jitney purposes. The power to prohibit certainly carries with it the right to regulate as it may deem proper and reasonable. The owners of jitneys are permitted to conduct their business on the streets through the grace of the city, and because they have been permitted to use certain streets at one time does not give any vested right to use them forever. The power that gave the right can take it away when not invading some vested or contract right."

[6] As stated, the injunction was granted here upon the assumption that jitney operators had an inherent right to the indiscriminate use of the streets, subject only to the same power which authorizes city commissioners to reasonably regulate the use of private vehicular traffic, which, as we have shown by the decisions, is universally denied. It is also contended that the ordinance is in conflict with the general laws relating to the vehicular traffic over the highways of the state. But the statutes invoked by appellees themselves expressly negative the effect thus sought to be given them. Gen. Laws 1917, pp. 474–485, c. 207, § 23, subd. 2 (Vernon's Ann. Pen. Code Supp. 1918, art.

820r); Id., p. 426, c. 190, § 25 (Vernon's Ann. Civ. St. Supp. 1918, art. 7012½h); Craddock v. City of San Antonio (Tex. Civ. App.) 198 S. W. 634; Gill v. City of Dallas (Tex. Civ. App.) 209 S. W. 209.

[7] Under the provisions of the so-called Home Rule Amendment to the Constitution (article 11, § 5), and the Enabling Act passed in pursuance thereof (Vernon's Sayles' Ann. Civ. St. 1914, art. 1096a, et seq.), and the authorities we have cited at great length, the board of city commissioners were clearly within their prerogatives in passing the ordinance. It is clear that the act does not transcend the power lodged in the city, that it contravenes no provision of the Constitution or general laws of the state, and that if enforced according to its provisions will interfere with the private, natural, or inherent rights of no person.

[8] These things being true, the court had no warrant to further inquire into, or hear and consider evidence relating to, the objects or effect of the act. The act being regular in form and clearly authorized by the delegating authority, and subversive of no private rights, the courts must hands off, except for the purpose of enforcing it. The commissioners who enacted the ordinance are responsible, not to the courts, but to the great body of the people who elected them. The necessity, wisdom, policy, expediency, economics, or reasonableness of the act are matters for the exclusive determination of the commissioners, and their action thereon is final, and cannot be set aside by a court, whose functions are to construe and enforce, rather than determine the wisdom of, the laws. If the ordinance in question, or any other lawfully enacted ordinance of the city is unjust or inexpedient or unwise, the redress of the betrayed constituent is in his own hands to be sought at the polls, and not in the courts. Nor can the courts inquire into the motives or the integrity of the commissioners in enacting an ordinance which is otherwise valid, as this one is. And while we expressly disclaim any purpose to uphold or approve the negotiations and contract which the record discloses were entered into by the mayor and commissioners with the San Antonio Public Service Company, we are nevertheless obliged to follow the universal holding that civil courts must not meddle with the manner in which legislative bodies exercise their consciences and judgments in the performance of duties wholly intrusted to them by law. A court has no right to sit in judgment upon the motive or intent of such bodies in the performance of a purely legislative act whereof they have undoubted jurisdiction. That right belongs exclusively to the voters to whom the legislative body is answerable. Soon Hing v. Crowley, 113 U. S. 703, 5 Sup. Ct. 730, 28 L. Ed. 1145; McQuillin, Mun. Ord. 257; Peters v.

City of San Antonio, supra; Decker v. City of Wichita, supra; Desser v. City of Wichita, supra; City of Emporia v. Ry. Co., 88 Kan. 611, 129 Pac. 161; Greene v. City of San Antonio, supra; Huston v. City of Des Moines, 176 Iowa, 455, 156 N. W. 883; People v. Gardner, 143 Mich. 104, 106 N. W. 541. It was said by the Supreme Court of the United States in the Soon Hing Case: .

"The rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferrable from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural ánd reasonable effect of their enactments. Their motives, considered as the moral inducements for their votes, will vary with the different members of the legislative body. The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile."

· The doctrine is thus expressed in McQuillin, Mun. Ord., 257:

"The general rule is well established that courts will not inquire into the motives of legislators where they possess the power to do the act, and it has been exercised as prescribed by the organic law. In such case the doctrine is that the legislators are responsible alone to the people who elect them. And this principle is generally applied to purely legislative acts of municipal corporations. * * * Neither the motives of the members, nor the influences under which they acted, can be shown to nullify an ordinance duly passed in legal form, within the scope of their corporate powers. The legality of the acts of legislative or of corporate bodies cannot be tested by the motives of the individual members, or the adventitious circumstances they may lay hold of to carry their measures, provided they proceed regularly and act within the scope of their powers."

Precisely in point is this, from the Supreme Court of Iowa, in the Des Moines Case:

"Lastly it is insisted that the statute and ordinance in question were passed in the interest of the street car system and for the benefit of 'intrenched interests' with the intent and purpose of driving 'jitney' busses from the streets, thus depriving plaintiff of his right to use his property and to make a living. If this were true, the question would be largely a political, and not a judicial, one. The remedy would be at the polls, and not in the courts. But it is well settled that the motives of a city council in passing an ordinance or of a Legislature in enacting a statute, as a general rule, cannot be inquired into by the courts."

And in the Peters Case it was said by this court: .

"When the right to use the streets is given, the convenience of the city, or what is deemed best for the people, is to be consulted, and not the desires of those who desire to convert the streets into their places of business. If the people, the voters of San Antonio, do not approve of the manner of regulation of jitneys, they can elect officers and instruct them to carry out their desires. It is a political question to be determined by the ballots of the people and not by the judiciary."

We hold that the enactment of the ordinance in question here was a valid exercise of the power vested in the board of city commissioners by the Constitution and laws of the state, and that the district court had no authority to inquire into or substitute its judgment for that of the commissioners as to the necessity for, or reasonableness of, that act, or to inquire into the motives of the commissioners in enacting it, or to otherwise in this case interfere with its enforcement. The judgment of the court below will therefore be reversed, and the order of that court granting the temporary injunction will be set aside.