Howard CARNEY, Secretary of State et al., Appellants,

v.

SAM HOUSTON UNDERWRITERS, Inc. et al., Appellees.

No. 10260.

Court of Civil Appeals of Texas.

Austin.

Oct. 20, 1954.

Rehearing Denied Nov. 17, 1954.

John Ben Shepperd, Atty. Gen., Elbert M. Morrow, Mary K. Wall, Asst. Attys. Gen., for appellants.

Vinson, Elkins, Weems & Sears, William E. Stapp, R. Richard Roberts, Houston, for appellees.

HUGHES, Justice.

This appeal involves the validity of an order issued by Roger Tyler, Assistant Secretary of State, on August 20, 1953, directed to Sam Houston Underwriters, Inc., Sam Houston Life Insurance Company, Insurance Securities Corporation, R. C. Salley, R. R. Bond, A. B. Reed, their agents and employees which ordered them

> " * * * to cease and desist from selling, offering for sale, soliciting sales, attempting to sell, soliciting orders for, undertaking to dispose of, undertaking to invite offers for, or dealing in any manner directly or indirectly, or by agent or salesman, by circular, letter of advertisement or otherwise, securities issued or to be issued by Insurance Securities Corporation, until such time as the said securities have been properly qualified under the Texas Securities Act."

The grounds upon which such order was based, as stated therein, were that the securities being sold or offered for sale had not been previously qualified for sale under an "Issues Permit" as required by the Securities Act of Texas [1] and that the further sale of such securities would " * * * tend to work a fraud on the purchaser thereof * * *." [2]

---

1. Art. 600a, V.A.C.S.

2. The issue of fraud has been abandoned and will not be further noticed.

Following the issuance of such order the parties affected thereby requested the Secretary of State for a hearing, which request was granted. Upon such hearing the order in question was confirmed by the Secretary of State in a written decision dated December 1, 1953.

This suit was filed in the court below on March 3, 1954, by all against whom the order of August 20 was directed. Named as defendants were the Secretary of State, Honorable Howard Carney, and his assistant, Honorable Roger Tyler, and the Honorable Omar Briggs, Jr., Securities Commissioner of the State of Texas.

A nonjury trial resulted in a judgment decreeing the order of August 20 null and void and enjoining the enforcement of such order as well as all interference with the sale of any securities issued by the Insurance Securities Corporation by any of its officers or duly licensed salesmen.

The defendants below are appellants here except that the Honorable Everett Fulgham has succeeded Senator Carney as Secretary of State.

The primary question for our determination is whether stock issued by Insurance Securities Corporation is exempt from the permit requirements of the Securities Act, it being conceded that such corporation has never applied for nor received a permit to sell such stock or other securities under the provisions of Sections 5–9 of such Act.

Insurance Securities Corporation was incorporated under the laws of the State of Texas on April 30, 1953, its purpose clause containing the powers enumerated in Art. 1303b, V.A.C.S., which we quote:

"A private corporation may be formed for any one or more of the following purposes, without banking or insurance privileges: to accumulate and loan money; to sell and deal in notes, bonds and securities; to act as Trustee under any lawful express trust committed to it by contract or will, or under appointment of any court having jurisdiction of the subject matter, and as agent for the performance of any lawful act; to subscribe for, purchase, invest in, hold, own, assign, pledge and otherwise deal in and dispose of shares of capital stocks, bonds, mortgages, debentures, notes and other securities or obligations, contracts and evidences of indebtedness of foreign or domestic corporations not competing with each other in the same line of business; to borrow money or issue debentures for carrying out any or all purposes above enumerated."

The exemptions which appellees rely upon are found in Section 3(o) of the Act which reads:

"Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the follwing transactions and under any of the following conditions, and' the company or person engaged therein shall not be deemed a dealer within the meaning of this Act; that is to say, the provisions of this Act shall not apply to any sale, offer for sale, solicitation, subscription, dealing in or delivery of any security under any of the following transactions or conditions:

\*　　\*　　\*　　\*　　\*　　\*

"The sale by the issuer itself, of any securities that are issued by a State or National Bank, by a trust company, or building and loan association organized and operating under the laws of the State of Texas and subject to the supervision of the Commissioner of Banking of the State of Texas, or Federal Loan and Savings Association, or a company subject to the supervision of the Banking Commissioner under Senate Bill No. 165,. 42nd Legislature, provided, however,. that all salesmen acting for any bank, trust company, or company subject to the supervision of the Banking Commissioner under Senate Bill No. 165,. 42nd Legislature, in the sale of such

securities within this State, shall be licensed as provided in this Act."

Specifically the exemptions claimed by appellees are (1) that Insurance Securities Corporation is a "trust company" within Sec. 3(o) and (2) that Insurance Securities Corporation is a "company subject to the supervision of the Banking Commissioner under Senate Bill No. 165, 42nd Legislature." Art. 1524a, V.A.C.S.

The trial court made these relevant findings on these two issues:

"(8) That Insurance Securities Corporation is a trust Company as that term is used in Section 3, Subdivision (o) of Article 600a, Vernon's Texas Civil Statutes, and has been a trust company at all times material to this suit.

"(9) That Insurance Securities Corporation is a company subject to the supervision of the Banking Commissioner under Senate Bill No. 165, 42nd Legislature (codified by Vernon's as Article 1524a) and was on August 20, 1953, at the time of the issuance of the Cease and Desist Order of such date, and on December 1, 1953, at the time of the entry of the order of the Secretary of State confirming said Cease and Desist Order."

Appellants say that our "* * * statutes provide three distinct methods for the creation of a company with trust powers. In one instance the corporation becomes a 'trust company' while in the other instances only certain enumerated 'trust powers' are conferred." They then refer to Art. 342–102, V.A.C.S., which for the purposes of the Texas Banking Code of 1943 defines the term State Banks as "including * * * trust companies, bank and trust companies * * *" and to Art. 342–301 which sets out the powers with which a State Bank may be incorporated citing specifically sections (c) and (d) of such Article which use the word "trustee."

Under these statutes *alone* do appellants say that a trust company can be incorporated under our laws.

The two instances in which companies may be formed with trust powers but without becoming trust companies are, appellants say, found in (1) Arts. 7.14 and 7.17 of the V.A.T.S. Insurance Code and (2) Art. 1303b, the statute under which the instant company was organized.

Appellants rely heavily, if not entirely, upon the case of American Trust Company v. McCallister, 136 Or. 338, 299 P. 319, 320, by the Supreme Court of Oregon. There the Court held that a corporation organized in 1901 with numerous trust powers was not exempt under a Blue Sky law enacted in 1913 which provided that it should not apply to "* * * 'national and state bank and trust company stock. * * *'" The reason for this ruling was that Oregon, also in 1913, enacted a law defining and providing for the incorporation and regulation of trust companies which required the deposit of a large amount of securities to guarantee faithful performance of their duties which regulatory statutes did not apply to the 1901 corporation, the Court saying:

"It would seem that 'trust company stock,' embraced in the statute, was intended, by the framers and makers of the law, to refer to stock of those trust companies defined by the statute and not to a corporation organized prior to the passage of that law under the general incorporation laws, although such corporation was authorized to perform certain trust duties. There are in the statute then three kinds of corporations: General corporations, some of which are empowered to transact a trust business; banks, authorized to do the business of a trust company; and trust companies, which are required to qualify by the deposit of securities, as above indicated. The reason for exempting trust company's stock from the necessity of coming within the provision requiring a permit is that such a trust company is qualified under the statute by depositing a large amount of securities to guarantee the faithful performance of their duties. Other corporations are

not subject to such requirement, but in order to sell securities or stock they are required to obtain a permit from the corporation commissioner. The requirement is plain and the reason thereof clear when the different statutes are taken into consideration."

We find that under Art. 7.15 of the Insurance Code there are deposit requirements made of those companies exercising trust powers under preceding Art. 7.14 which are very similar to the deposit requirements of the Oregon statute yet strangely enough appellants contend such corporations are not "trust companies."

There is no comparable statutory situation in Texas in the matter before us so as to make McCallister a case in point. There are isolated statutory references to trust companies, as appellants indicate, in Arts. 342–102 and 1513, and Insurance Code Art. 7.17, V.A.C.S., and perhaps others but we have no comprehensive statute defining, regulating and providing for the incorporation of purely trust companies.

■ It is our opinion that Insurance Securities Corporation being lawfuly endowed with broad and substantial trust powers is a "trust company" within the exemption of Sec. 3(o), supra.

■ In Stewart v. Ramsey, 148 Tex. 249, 223 S.W.2d 782, it was held that a corporation having the same powers as Insurance Securities was in the trust business and entitled to use the word "Trust" in its name. We believe that a corporation in the trust business and lawfully advertising itself as a trust company is a trust company just as much as a company in the lumber business is a lumber company. This accords with the ordinary conception of a trust company as being one authorized to take and administer trusts.

■ Our conclusion in this matter is aided by the rule of statutory construction that a statute having the severe penalties prescribed for its violation as found in Sec. 30 of the Securities Act should be strictly construed.

Having reached the stated conclusion other questions presented by the parties become immaterial to a proper disposition of this case.

The judgment of the trial court is affirmed.

Affirmed.

## On Motion for Rehearing

Appellants dispute our statement that the issue of fraud, one of the grounds upon which the cease and desist order was issued, had been abandoned and direct our attention to Point 4 of their brief which reads:

"The trial court erred in failing to hold that the sale of stock of Insurance Securities Corporation is not exempt from the provisions of the Texas Securities Act which prohibit fraud in the disposal of securities."

Under this point appellants argue the question of law involved but neither there nor elsewhere in their brief do they assign error as to the factual issue of fraud which, by implication at least, was resolved against them. They also permitted to go unanswered this statement from appellees' brief:

"We respectfully say to the Court that this counter point (to appellants' point 4) is actually aside from the real issues involved in this case, which are simply the question of exemption and the constitutional questions heretofore presented; and we point out, as evidence of the fact that fraud is not a proper part of this case, that none of the parties requested any finding thereon in the trial court, and the trial court saw no occasion to make any finding thereon, despite the extensive findings and conclusions made by the trial court in the declaratory judgment; and any determination on appeal which involved this question would require remand of the cause to the trial court for his further finding and conclusion in this regard. Neither the trial court or the parties deem this matter in-

volved in the case and it is not properly involved here. We have inserted it in the brief solely for the sake of completeness and in the event this Court should have any question as to why it was briefly mentioned in Appellants' brief but occupies no position of importance in the presentation of the issues which the parties have drawn between them for final determination on appeal of this cause."

■ Appellants' Point 4, as we interpret the record, calls merely for the rendition of an advisory opinion which our courts are not authorized to give.

■ Appellants also assert that we should have, in all events, sustained the cease and desist order against Sam Houston Life Insurance Company. We quote from their motion:

"It was stipulated on the trial of this cause that Sam Houston Life Insurance Company did not have a security dealer's license and that it had not obtained a permit to sell securities under the provisions of Sections 5–9 of Article 600a. The uncontroverted evidence shows that the President of Sam Houston Life Insurance Company (R. C. Salley) wrote and mailed a letter to stockholders of the company soliciting the sale of stock of Insurance Securities Corporation. There is no disputed fact question on this point."

There was other evidence on this matter besides the letter itself. Mr. Salley testified:

"Q. (By Mr. Morrow) Mr. Salley, I think I have just one or two more questions. This letter of, that was mailed by Sam Houston Life Insurance Company, did you have any offers to buy on the basis of that letter? A. Well, it wasn't mailed by Sam Houston Life Insurance Company. It was mailed by R. C. Salley. Sam Houston Life Insurance Company and other officers, directors, knew nothing about it. That was mailed by me and the main reason I mailed it on this letterhead was we hadn't had our own letterheads printed at that time for Insurance Securities Corporation, and was signed Sam Houston Life Insurance Company by R. C. Salley, as President. That is just an oversight that I sign all letters like that in just sending out what my position is. You asked the question, I believe, whether the Sam Houston Life Insurance Company received any offers to buy?

"Q. Yes. A. They did not.

"Q. Well, did Insurance Securities Corporation? A. Yes, they did and they are, the application for the stock was filled out and mailed back in an envelope, self-addressed envelope to the Insurance Securities Corporation.

"Q. Do you happen to recall who paid for the printing of the letter, which company paid for it? A. Which company paid for—

"Q. For the printing and distribution of that letter? A. The Insurance Securities Corporation, outside of the letterhead, of course that was on hand. Any expenses incurred by the Insurance Securities Corporation was paid by them."

It is our opinion that the evidence does not conclusively show that Mr. Salley was acting for Sam Houston Life Insurance Company when the letter in question was written and mailed. We also note that appellants have no point in their brief presenting this question.

The motion is overruled.

Motion overruled.